# CLINCHFIELD RAILROAD COMPANY v. ROBIN FORBES. No. 19.—417 S.W.(2d) 210.

Eastern Section. December 2, 1966.

Certiorari Denied by Supreme Court June 5, 1967.

Wilson, Worley & Gamble, Kingsport, A. K. McIntyre, Erwin, for plaintiff in error.

Wright & Cate, Todd & Dossett, Kingsport, for defendant in error.

PARROTT, J. Robin Forbes brought this suit to recover for personal injuries allegedly sustained when an automobile driven by him collided with a switch engine of the defendant at the Tennessee Street crossing in Johnson City. The jury found in favor of Forbes and returned a verdict for $90,000. The Circuit Judge granted a $15,000 remittitur and judgment in the amount of $75,000 was entered against the defendant who perfected the present appeal.

The declaration in this case contained statutory and common law counts. At the close of all the proof the trial judge directed a verdict in favor of the defendant as to the statutory counts and the case was submitted to the jury solely on the common law count which alleged the railroad (1) failed to keep a proper lookout ahead, (2) failed to sound the whistle or ring the bell, and (3) the failure of the flashing signal lights at the crossing to properly operate.

The defendant railroad has appealed, insisting (1) there is no evidence of negligence on the railroad's part (2) plaintiff was guilty of contributory negligence, (3) the court erred in admitting into evidence a professional football contract signed by the plaintiff, (4) the court erred in its charge to the jury, and (5) the judgment is excessive.

As to the court's failure to direct a verdict in favor of the defendant, it has been often pointed out that the propriety of directing a verdict depends upon whether there is material and competent evidence which, if believed and viewed in the light most favorable to the plaintiff, supports the plaintiff's cause of action as set forth in the declaration. No question of the credibility of wit-

nesses is involved and every inference reasonably to be drawn from the evidence must be resolved in favor of the plaintiff.

In resolving the question of plaintiff's contributory negligence as well as the question of defendant's negligence, we must be governed by the rule so clearly stated in D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S.W.2d 897, as follows:

" 'While these issues involve a review of the evidence, such review is not to determine where the truth lies or to find the facts, that not being our province in jury cases. It is only to determine whether there was any substantial evidence to support the verdict; and it must be governed by the rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict. Johnston v. Cincinnati N. O. & T. P. R. Co., 146 Tenn. 135, 149, 240 S.W. 429; Finchem v. Oman, 18 Tenn.App. 40, 49, 50, 72 S.W.2d 564, 570.' "

In Poole v. First Natl. Bank of Smyrna, 29 Tenn.App. 327, 196 S.W.2d 563, as well as many other cases, this Court stated:

"The credibility of witnesses is peculiarly a question for the jury, and in determining a motion for a directed verdict the judge has no right to determine the question of the credibility of any witness."

Keeping in mind the above rules and authorities, let us consider the evidence in this case.

The accident occurred on March 6, 1965, at about 7:30 p.m. in Johnson City at the Tennessee Street crossing. It was dark and cold with a light snow falling. The grade crossing consists of five railroad tracks running in a north-south direction. Defendant's switch engine [without any cars attached] was traveling in a southerly direction at approximately ten to fifteen miles per hour. Tennessee Street runs in a general east-west direction and intersects the railroad at approximately a right angle. Plaintiff's car was approaching from the east and the collision occurred on the fourth track from the east.

This crossing is protected by an electrically operated signal which flashes red lights and rings a bell to warn motorists of an approaching train. On the east side of the crossing this signal is located some 23 feet from the first track. These signals are activated by the engine passing over an apparatus placed on the track 146 feet from the crossing.

Mr. Forbes testified he stopped before crossing the first track, looked both ways, did not see the flashing signal lights nor did he hear the bell or whistle of the engine. He proceeded in low gear and just before reaching the fourth track, his passenger, Jerry White, saw the approaching train and attempted to warn Forbes but there was not time to stop the car. Mr. Forbes never saw the engine until the impact.

Mr. White corroborated Forbes' testimony as to his stopping, looking, that the signals were not working and neither did he hear a bell or whistle.

Further corroborating evidence that these signals were not working is the testimony of Vance Randall and Margaret Brown, students at East Tennessee State Uni-

versity, who were approaching from the opposite direction as the plaintiff. It was their testimony that they pulled up across the first track, observed the engine and then backed up to a safe distance to let it pass. Miss Brown testified the signals did not start working until just at the time of the impact. Neither of these witnesses heard the bell or whistle.

The members of the train crew testified that some 30 minutes prior to the accident they had gone over this crossing and that the signals were working. At the time of this collision two of the train crew were on the back of the engine and could not see the signals. The fireman was riding in the engineer's seat on the right side and could not see the approaching car but did testify the signals were working.

Mr. Lewis, the engineer, was riding on the left side of the engine and would not say whether the electric warning signals were working or not. His reason for not seeing the signal was that he was watching the Forbes car. He first saw the lights of the car more than 200 feet away from the crossing with the car actually coming into his view as it emerged from behind a billboard and some large gas tanks several feet away from the first track. He saw the car come by the signal light and as the car approached the first set of tracks, he called to the fireman, "Easy, Ed, easy," who applied the brake to slow the engine down. At this time the engine was traveling approximately 10 miles per hour with the car going at a slower speed. As the car crossed the second track, Mr. Lewis yelled to the fireman, "Shoot 'em," meaning for the emergency brakes of the engine to be put on. At the time the emergency brakes were applied, the engine was

15 to 25 feet from the crossing. After the impact the engine came to a stop, blocking two-thirds of the crossing.

The members of the train crew testified the whistle was blowing and the bell ringing as the engine approached the crossing. It appears to be undisputed that the headlights and other lights of the engine were on.

In this evidence we have a sharp dispute as to whether or not the electric warning signal was working at the time Forbes approached the crossing. Also disputed is whether the bell and whistle were being sounded.

▮ In our opinion the trial judge properly refused to direct a verdict for the defendant upon its insistence it was guilty of no negligence and that the plaintiff was guilty of contributory negligence. From this evidence the jury could have determined the bell and whistle were not sounding and also that the automatic signal lights did not come on until after Forbes had entered upon the tracks. In our opinion the minds of reasonable men could differ as to whether or not engineer Lewis used the proper degree of care commensurate with the circumstances. Mr. Lewis testified he saw the Forbes car long before it reached the tracks. Although he was looking in the direction of the automatic signal, he did not know whether it was working. He never called for full brakes on the engine until the car had crossed over two sets of tracks.

▮ As to the failure of the Court to direct a verdict on the ground plaintiff was guilty of contributory negligence, plaintiff did look before entering the crossing and, even though he did not rely on the fact that the signals were not on, his contributory negligence was a question for the jury. Since it was dark and snow was falling, plaintiff is not chargeable as a matter of law with

failure to see the train as in Union Railway Co. v. Jinks, 55 Tenn.App. 491, 402 S.W.2d 495, and other cases like it.

In the case of Gaines v. Tennessee Central Railroad Co., 175 Tenn. 389, 135 S.W.2d 441, which is very similar to the present case, our Supreme Court said:

"In the late case of Southern Railway Co. v. Penley, 175 Tenn. 380, 134 S.W.2d 177, opinion filed December 16, 1939, this court held that the rights of a traveler approaching a crossing where a railroad company maintained an automatic signal and the automatic signal failed to function were quite similar to the rights of a traveler approaching a crossing where a railroad company maintained a flagman and the flagman was absent from his post of duty. The rule in case of an absent flagman was announced by this court in Tennessee Cent. Railroad Co. v. Gilbert, 131 Tenn. 201, 174 S.W. 812. That rule is in substance that a traveler is not entitled to rely solely upon the absence of the flagman as an indication of safety, yet such absence tended to blunt the edge of caution and that under all the circumstances of the particular case it was for the jury to say, the traveler having observed the absence of the flagman, whether he was to be excused from further looking or listening for an approaching train.

"This rule is quite generally said to prevail in cases where an automatic crossing signal fails to function, just as we have applied it in Southern Railway Co. v. Penley, supra. Numerous cases are collected in Notes, 53 A.L.R., 978, and 99 A.L.R., 733."

Defendant further insists the court erred in permitting the introduction into evidence, over objection of defendant, a contract the plaintiff had signed with the Cleveland

Browns to play professional football. The basis of the objection was that the contract was not evidence of plaintiff's ability to earn because it was contingent upon the plaintiff's making the team and there being no evidence the plaintiff possessed the necessary skill and ability to play professional football, the admission of the contract was of no probative value and was at the most only speculative.

It was shown the plaintiff was 25 years old and had been an outstanding football player for East Tennessee State University for the past four years. One of his coaches and other witnesses familiar with the game of football and the plaintiff's playing ability testified they considered Forbes an outstanding athlete. It was also shown that many professional football teams were interested in his services prior to his signing this contract with the Cleveland Browns.

■ In an action to recover for personal injuries the measure of damages is not the loss of time or earnings but the loss or impairment of the ability to earn is the proper basis of damages. Dixie Feed & Seed Co. v. Byrd, 52 Tenn.App. 619, 376 S.W.2d 745.

■ There are numerous matters which may be considered in determining the amount of damages and impairment of earning capacity or loss of future earnings. In 25 C.J.S. Damages sec. 87b, is found the following:

"'The measure of damages for the diminution of one's capacity to earn money, or for loss of future earnings, involves numerous considerations. As a broad general rule, all evidence tending to show the character of plaintiff's ordinary pursuits and the extent to which the injury has prevented, or will prevent him from

following such pursuits is admissible. Evidence which consists of mere guesswork and speculation, as with respect to what may happen, should be excluded, although it has been said that testimony tending to establish the future earning capacity of any person is necessarily speculative.

"Further, it is obvious that the evidence offered should relate to plaintiff's earning capacity. As bearing on this question, it is proper to take into consideration plaintiff's age, and in like manner, attention may be brought to his health, character, capacity, ability to work, intelligence, skill, talents, experience, training, and industry. In addition, it is proper to consider plaintiff's habits, and other personal qualities. Other matters to be considered are plaintiff's surroundings, record of employment, and station in life, his expectancy of life, his occupation, business or profession, the effect of the injury thereon, the value of his services, avenues of occupation open to him, and the physical capacity of plaintiff to perform his work at the time he was injured and thereafter."

From the above general rule we believe any competent evidence that is relevant to a person's earning capacity is admissible and it is for the jury to consider all the evidence on the question and give the proper weight to each part of the evidence.

This contract was exhibited to the jury who were made aware of the contingency that Forbes did not receive any compensation until he made the team. It was for the jury to weigh this piece of evidence along with all the other competent evidence.

Defendant, in its assignments of error and brief in this Court, sets forth four portions of the Court's charge and argues the trial judge committed error by these instructions. We have carefully read the entire charge, particularly those parts which defendant complains of and find no prejudicial error. For the sake of brevity we will not copy in this opinion the portions of the charge which defendant contends are prejudicial.

■■ It is noted that all except one of the defendant's complaints are directed to portions of the charge in which the trial judge was setting out the plaintiff's theories. In the trial defendant made no objection to these parts of the charge nor did he call to the attention of the trial judge that the theories were being misstated. It has long been the rule in this state that if the trial judge does not clearly charge the theories, it is the duty of the counsel to call the matter to the attention of the court and his failure to do so is a waiver of the error. Beech v. Hunter, 14 Tenn.App. 188, 194; Elkin Motor Co. v. Ragland, 6 Tenn.App. 166; Mayor and Aldermen of the Town of Morristown v. Inman, 47 Tenn.App. 685, 342 S.W.2d 71.

Another assignment of error is directed to the portion of the charge set out below:

"In connection with this automatic signal, gentlemen, that it is entirely a question for the jury to determine if those automatic signals were not working as to whether or not their situation would relieve a person of negligence under a given set of circumstances where he was crossing and the automatic signals were not working. That is a question of fact for the jury, that there is no preconceived set of rules that the Court can give you. Each one of these cases has to be judged on

its own set of circumstances, and that is simply one aspect of the question of negligence, whether in a case of that sort that that would sort of dull or sort of relieve the plaintiff of other duties.'' .

Defendant argues to this Court that this part of the charge was error because there was no proof the railroad was negligent in the maintenance or upkeep of these automatic signals and that the evidence shows without dispute that Forbes did not rely upon the alleged failure of the signals to work.

It is true there is no evidence that the railroad was negligent in maintenance or upkeep. However, more than one eye witness testified the signals did not begin to work until after Forbes had entered upon the crossing.

Furthermore, both parties called expert witnesses who went into great detail as to how these signals operated. It was their testimony that the red lights and bells were activated when the engine passed over a switch or apparatus some 146 feet from the crossing. The train's passing over the switch made a short circuit causing an electrical impulse to travel through the rail which activated the signals. It was their testimony that if these rails or the switches accumulated industrial dust, corrosion, rust or other substances, such would act as an insulator which could prohibit the short circuit and cause the signals not to work. One of these witnesses had a model diagram which included signals, switch and rails. It was demonstrated how, when a rusty spike was placed upon the rails, the signals failed to operate but, when a spike without rust was placed upon them, it would activate.

When we consider the facts in this case and the charge as a whole in which was properly given to the

jury the degree of care which both the railroad and plaintiff were required to use along with the correct statements of the law as to contributory negligence, we cannot say this portion of the charge was prejudicial. The Court in this charge made it clear that the failure of this signal to work was "simply one aspect of the question of negligence" and did not relieve the plaintiff of a duty to exercise ordinary care.

Also on this same subject matter, the defendant insists it was error on the part of the trial judge for his failure to direct a verdict in its favor on the second count of the declaration which charged the railroad company was guilty of negligence in maintenance of the signal system. As heretofore stated, there was no proof of such negligence. In our opinion the trial judge should have directed a verdict in favor of the railroad company on this count. However, we cannot say this is prejudicial error since there is evidence of negligence sustaining other counts of the declaration.

Under T.C.A. 20-1317, a general verdict is not vitiated by the absence of proof on some counts of the declaration if there is evidence to sustain the averments of a single count. Our courts have long held that in the absence of an affirmative showing that the jury found liability under a count of the declaration unsupported by evidence, the judgment will not be reversed by the failure of the trial judge to direct a verdict upon the count not sustained by proof. Taylor, et al. v. Cobble, et al., 28 Tenn.App. 167, 187 S.W.2d 648; City Transportation Corp. v. Seckler, 32 Tenn.App. 661, 225 S.W.2d 288

The defendant further claims the verdict and judgment entered in this case is excessive. We will have to concede

this judgment is higher than is usually rendered in cases of this type but under the facts, can we say the verdict of the jury in part rests on passion, prejudice and caprice?

■ The plaintiff in this case was a young man 25 years of age with four years of college education. He incurred medical expenses of $1350.27. Some four months after the accident it was diagnosed that he had a herniated disc which could only be repaired with surgery. His recovery from the surgery was normal but, according to the testimony of two of the doctors, he would suffer a permanent disability the remainder of his life. These doctors testified his disability would prevent him from playing football and, in their opinion, he should not be approved for employment in industrial plants. Further opinions were expressed that if the plaintiff pursued a football coaching career, his permanent disability would affect his bodily movements and he would be unable to do the stooping, bending and other necessary physical movements a coach normally would do in their field.

From the overall testimony it is clearly shown that the plaintiff's activities in the future will be somewhat restricted by this permanent disability. There is little question that prior to the operation the plaintiff suffered much severe pain. Since the operation he has had some pain but the prognosis is that this pain will diminish as time goes on.

■ The appellate courts of this State have pointed out on numerous cases that the amount of the verdict in a personal injury case is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence. Reeves v. Catignani,

157 Tenn. 173, 7 S.W.2d 38. And where the trial judge has ruled upon the issue of excessiveness, whether his ruling results in the granting or overruling of the motion for a new trial or whether it results in the suggestion of a remittitur, his ruling will not be disturbed on appeal unless an abuse of discretion is shown. Stark v. Yost, 47 Tenn.App. 28, 334 S.W.2d 954; Monday v. Millsaps, 37 Tenn.App. 371, 264 S.W.2d 6; Town of Clinton v. Davis, 27 Tenn.App. 29, 177 S.W.2d 848.

 While no mathematical rules of a computation have ever been formulated making verdicts and judgments uniform in negligence cases, it is the duty of the courts to take into consideration the nature and extent of the injuries, the suffering, expenses, diminution of earning capacity, inflation and high cost of living, age and expectancy of life and amounts awarded in other similar cases. France v. Newman, 35 Tenn.App. 486, 248 S.W.2d 392.

Applying the above rules to the instant case, it is our considered opinion that the heretofore ordered remittitur of $15,000 was proper. Having found no additional reason to justify a further reduction in the judgment, the same is affirmed with the costs of this appeal taxed to the plaintiff in error.

McAmis, P. J., and Cooper, J., concur.