Jack D. MARRESS, Jr.,
Plaintiff-Appellee,

v.

CAROLINA DIRECT FURNITURE, INC., Defendant-Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Nov. 22, 1989.

Permission to Appeal Denied by
Supreme Court Feb. 5, 1990.

Joe Bednarz, Thomas J. Drake, Jr., Bednarz, Dalton & Eason, Nashville, for plaintiff-appellee.

W.P. Ortale, Wendy Lynne Longmire, Steven R. Clark, Ortale, Kelley, Herbert & Crawford, Nashville, for defendant-appellant.

## OPINION

CANTRELL, Judge.

The agent of the defendant-appellant, Carolina Direct Furniture, Inc., driving a company van, rear-ended an automobile owned and operated by the plaintiff-appellee, Jack Marress. At the trial, the jury returned a verdict in favor of the plaintiff. On appeal, the defendant asserts that the trial judge admitted incompetent evidence concerning the plaintiff's losses, improperly commented on the evidence, and throughout the trial demonstrated an obvious bias in favor of the plaintiff.

In the accident, the plaintiff suffered an injury to his back. He first saw a general practitioner who prescribed some medicine for pain and recommended that the plaintiff see an orthopedic surgeon. After trying a conservative course of treatment for approximately two months, the surgeon performed a myelogram which revealed that the plaintiff had a herniated disc. The surgeon then performed a laminectomy to remove the disc. Mr. Marress continued to experience pain for approximately three months, prompting the doctor to perform

another myelogram. The doctor concluded that there was no further nerve compression. Pain persisted, however, and lessened only gradually over a long period of time. According to the doctor, Mr. Marress retains a permanent disability of fifteen percent to the body as a whole.

### A.

At the trial, the plaintiff testified in his direct examination:

Q. Based on your physical condition today, sir, do you think you will be able to do any shift work at all over the next six years?

A. Not the way I feel today I won't, no.

Q. How about as you have felt over the last year?

A. No.

At this point the defendant's counsel objected and the following exchange between counsel and the court took place:

MR. ORTALE: Your Honor, I have got to object to this as being purely speculative testimony by this witness.

THE COURT: Well, the only way—the only way you are going to get this evidence to the jury, Mr. Ortale, is in the manner he is doing it. Naturally, it is speculation maybe, because nobody but God knows what is going to happen, and he is just trying to prove his case, and that is the only way you have to do it.

MR. ORTALE: We are entitled to hear testimony that has reasonable certainty involved in it, Your Honor, not pure speculation, and this witness is testifying—

THE COURT: Let's don't make a jury speech here.

MR. ORTALE: I'm telling the Court that.

THE COURT: Go ahead. The jury will give such weight as it wants to to the proof that you hear. But if you don't offer the proof, you have nothing to go with, and I will tell you that you can't speculate, but what he said is if he continues to feel as he does right now. So, go ahead. I don't know of any other way that you can get proof of this kind into the record, Mr. Ortale. If he don't put it in, then you would jump on him for

not doing it. I think he has a right to do it. Go ahead.

Following that exchange the witness also testified, over the defendant's objections, that his retirement pay would be $185.00 per month less if he could not work twelve hour shifts rather than straight days.

The testimony quoted above is the basis for the first issue in this appeal. The defendant asserts that the court erred in allowing the plaintiff to testify about the loss of future wages and retirement benefits based on how he felt at the time of the trial. The defendant insists that the testimony is based on pure speculation.

■ As an element of his damages, the plaintiff is entitled to prove the loss of his earning capacity. *Clinchfield Railroad Co. v. Forbes*, 57 Tenn.App. 174, 417 S.W.2d 210 (1966). In the *Forbes* case the court quoted from 25 C.J.S. *Damages*, § 87(B), on the question of a loss of earning capacity:

The measure of damages for the diminution of one's capacity to earn money, or for loss of future earnings, involves numerous considerations. As a broad general rule, all evidence tending to show the character of plaintiff's ordinary pursuits and the extent to which the injury has prevented, or will prevent him from following such pursuits is admissible. Evidence which consists of mere guesswork and speculation, as with respect to what may happen, should be excluded, although it has been said that testimony tending to establish the future earning capacity of any person is necessary speculative.

Further, it is obvious that the evidence offered should relate to plaintiff's earning capacity. As bearing on this question, it is proper to take into consideration plaintiff's age, and in like manner, attention may be brought to his health, character, capacity, ability to work, intelligence, skill, talents, experience, training, and industry. In addition, it is proper to consider plaintiff's habits, and other personal qualities. Other matters to be considered are plaintiff's surroundings,

record of employment, and station in life, his expectancy of life, his occupation, business or profession, the effect of the injury thereon, the value of his services, avenues of occupation open to him, and the physical capacity of plaintiff to perform his work at the time he was injured and thereafter. *Id.* 417 S.W.2d at 215.

In *Southern Coach Lines v. Wilson,* 31 Tenn.App. 240, 214 S.W.2d 55 (1948), the court faced a contention by the defendant that the admission of evidence about a loss of earning capacity in the future was erroneous because there was no proof that the injury was permanent. Although the court held that the proof was admissible on the question of losses that had already occurred, it also said the following with respect to the future loss of earning capacity:

It is true, as said for defendant, that neither doctor attempted to estimate the probable duration of plaintiff's injury. But from the evidence of its course in the past it was reasonable to infer that it would probably continue for an appreciable time in the future. *Id.* 214 S.W.2d at 57.

▮ In this case, there was evidence that the plaintiff had suffered a permanent injury. His treating physician gave an opinion that Mr. Marress had a permanent impairment of fifteen percent to the body as a whole. Mr. Marress himself said he couldn't work a twelve hour shift because of the increased pain and discomfort, and that the doctor had recommended that he work no more than eight hours a day five days a week.

Under these circumstances, we are of the opinion that the proof offered by the plaintiff was admissible on the question of the loss of the future capacity to earn. Although plaintiff's choice of words may have been unfortunate when he said he was basing his testimony on how he felt at the time, we think the evidence fell in that broad area "tending to show the character of the plaintiff's ordinary pursuits and the extent to which the injury has prevented or will prevent him from following such pursuits." 417 S.W.2d at 215. He has a permanent injury. Under the circumstances

we think it was for the jury to decide how much weight should be given to the plaintiff's testimony.

## B.

In his second issue, the defendant asserts that the trial judge unfairly limited the defendant's cross-examination of the plaintiff.

On direct examination, the plaintiff testified that he had incurred expenses in the amount of $589.29 for prescription medicines as a result of the injury he received in the accident. During the discovery phase of the litigation, however, the plaintiff had answered an interrogatory submitted by the defendant in which he listed expenditures totalling more than $1,000.00 for prescribed medicines. As the defendant's counsel attempted to cross-examine the witness about the inconsistency, plaintiff's counsel objected and the following exchange took place:

MR. BEDNARZ: May it please the Court, I don't know what the relevancy of it is. We submitted a prescription bill that totals some $1,000. And there is medication on there that is not related to the accident, but we only claimed $589 of what is on there. We have not claimed those other medications.

THE COURT: Is that true, Mr. Ortale?

MR. ORTALE: No. Your Honor, this was submitted.

THE COURT: He submitted that list that was over $1,000 but only claimed 500 and something?

MR. ORTALE: During this lawsuit, just during direct examination of this witness, that is—

THE COURT: Would you answer my question, please.

MR. ORTALE: Your Honor, that is true, but this is true too. They are both true.

THE COURT: Is Mr. Bednarz' statement true, that that is the list he submitted, it was over $1,000, but you were informed they were only claiming $500? Is that what he did at that time the interrogatories were answered?

MR. ORTALE: This was answered under oath, Your Honor. Yes, it was.

MR. BEDNARZ: Your Honor, I did not at that time tell him 589, but we have never claimed specifically the whole thing.

THE COURT: I don't see any need to make that an exhibit. That was taken back. You don't have to.

MR. ORTALE: Note an exception. I do want to make sure that I have that on the record.

Q: (By Mr. Ortale) Well, in fact, this list that was submitted under oath to Ms. Longmire is not truly a list of expenses incurred as a result of this accident, is it?

A. It has some other medicine on it.

Q. Okay. It has medications on there that you were taking before this accident ever occurred?

A. Yes, sir.

■ The defendant asserts that the trial judge erred in restricting the cross-examination of the plaintiff concerning his interrogatory answers.

We concede that the trial judge perhaps became too involved in the proceeding and may have misunderstood what had transpired because some of the answers given by defendant's counsel were not too clear. When the trial judge asked defense counsel if the plaintiff had informed counsel that he was only claiming $500.00 from the items on the list, counsel said, "This was answered under oath, Your Honor. Yes, it was." It is obvious from reading the transcript that the plaintiff had not informed the defendant prior to trial that he was claiming only $589.29 of the full $1,000.00 included in the interrogatory answer. When the plaintiff testified at the trial that he had incurred less expenses than the interrogatory showed, the defendant should have been allowed the right to cross-examine him on the inconsistency. *See Sikes v. Tidwell,* 622 S.W.2d 548 (Tenn. App.1981).

We are persuaded, however, that the defendant finally got the answer he wished when, at the end of the quoted part of the transcript, he got the plaintiff to admit that he had filed an answer to the interrogatories that was not true. He said the list submitted was not truly a list of the expenses incurred in the accident and the list included medications that were taken before the accident ever happened. Because those answers were essentially what the defendant was seeking to establish through the cross-examination, we think no error occurred in the exchange preceding it.

### C.

■ The appellant also argues that plaintiff's counsel interjected improper statements into voir dire and argument. The record shows that during the voir dire, plaintiff's counsel told the potential jurors that in prior cases he had had jurors tell him it was disturbing to have to answer so many personal questions during voir dire. According to plaintiff's counsel, one of the jurors had even said, "How would you like it if we asked you about your background." With that preamble, counsel for the plaintiff said:

I think, well—I'm going to tell you a little bit about myself, not that it really matters, but just to let you know the kind of questions you can anticipate from me. I'm fifty-one years old. I almost said fifty-two. I'm fifty-one years old. I'm originally from Massachusetts, spent a lot of time in the Army. I'm a registered Democrat. I'm a lawyer. My hobbies at this time—

MR. ORTALE: Your Honor, I don't know if I should object at this point or not. I wonder if—

THE COURT: To what? Being a registered Democrat from Massachusetts? We are going pretty far afield, I think. The purpose of voir dire is to permit them to ask questions, to get twelve people who will listen to this case and decide it fairly for all the parties and not have any prejudices or any biases in the back of their mind that they bring into the courtroom. So, what Mr. Bednarz did or didn't do I don't think really is important. No reflection on your illustrious past, but seriously, we're going a little too far.

Appellant does not cite any authority for the proposition that the quoted exchange between counsel and the Court amounted to reversible error. We think the objection raised and the Court's ruling headed off any problems that might have resulted had plaintiff's counsel continued with his personal history.

■ Later during the voir dire the following exchange took place:

MR. BEDNARZ: Mr. Ortale has mentioned several times sympathy as if we are looking for sympathy. Mr. Hastings, we are not looking for sympathy. But I'm going to ask you in closing argument and I will ask you now—although you are not supposed to let sympathy affect your judgment, I think you can let empathy be involved in this case, and that is can you—

MR. ORTALE: Your Honor, I object to Mr. Bednarz telling the jury that they can—what he thinks they can do. That is not proper. It is not proper argument and not proper opening.

THE COURT: I overrule your objection. Go ahead.

MR. BEDNARZ: We don't want sympathy, Mr. Hastings, but we do want understanding, understanding whether it is sympathy or something else. Can you examine these damages with an understanding of the effect that the damages have on the whole person? Can you do that?

Although the defendant cites this excerpt from the record as reversible error, again the defendant does not cite any authority that compels that conclusion. We think the question, as amplified after counsel's objection, was a proper question to ask on voir dire.

■ With respect to the statements made during closing argument, the record reflects that counsel for the defendant did not object to any of the statements at the trial. "An objection to the remarks or conduct of counsel must be made at the trial and a ruling had thereon, or they will not be considered on appeal." *Lee v. Lee,* 719 S.W.2d 295 at 299 (Tenn.App.1986). *See also Morgan v. Duffey,* 94 Tenn. 686, 30 S.W. 735 (1895); *Miller v. Alman Construction Co.,* 666 S.W.2d 466 (Tenn.App. 1983).

### D.

In its next issue, the defendant asserts that the trial judge had improperly influenced members of the jury panel by remarks made in the courthouse elevator regarding the amount of damages the jury had awarded in another case. In support of this argument, in the motion for a new trial, the defendant attached the affidavit of a prospective juror called in this case. The affidavit states:

My name is Rhonda Ann Slavens, and I reside at 500 Cheyenne, Lot 299, in Madison, Davidson County, Tennessee. I served on jury duty during the week of October 31, 1988 through November 3, 1988. During that time, I was empanelled as a juror in an accident case in which Judge Harry Lester presided. After extensive deliberation on this case, we, the jury reached a verdict for the plaintiff. Upon release from that trial, I found myself in the same courthouse elevator as Judge Harry Lester. Another juror who had sat on this case was in our company. At that time, Judge Harry Lester told us that we had been very unfair in rendering our verdict in that it was too low, and that he was going to grant an additur. I understood he was saying our verdict was unreasonably low.

On November 2, 1988, I was called and seated as an alternate juror in the case of *Jack D. Marress, Jr. v. Carolina Direct Furniture, Inc.,* which was also in Judge Harry Lester's court. Upon being seated, I and another alternate were questioned by the Judge briefly concerning any reason that we knew of which would prevent us from being fair in this trial. At that point, I raised my hand and announced to the court that based on the conversation Judge Lester and I had had in the courthouse elevator the day before concerning the previous trial in which I had sat as a juror, I did not feel competent to sit on any of Judge Lester's juries. I was then excused from serving

as a juror on that particular trial. Several other jurors who had deliberated on that previous trial were empaneled on the *Marress* trial. I know that these jurors knew of the conversation Judge Lester had had with me because I told them before the *Marress* trial started.

There are no other affidavits from the jurors who served on this case showing that they heard the judge's remarks or that the substance of the remarks had been related to them, or that they felt pressured to return a larger verdict because of the judge's attitude.

■ Ordinarily, "It is incumbent upon the party raising an issue to show prejudice from the erroneous action of the trial court." *Parker v. Prince*, 656 S.W.2d 391 at 400 (Tenn.App.1983). Since the defendant has not shown any specific prejudice from the judge's action, if we are to reverse the judgment in this case the reversal must rest on a holding that the judge's action was reversible per se. *See Guy v. Vieth*, 754 S.W.2d 601 (Tenn.1988).

So far as we have been able to determine, in only one case have the courts of this state held it reversible per se for a trial judge to communicate with the jury out of the presence of counsel. In that case, after the jury began its deliberations, the judge went into the jury room and had a conversation with the jury without counsel being present. *McBride v. Allen*, 720 S.W.2d 459 (Tenn.App.1979). This court said in that case: "We hold that in the absence of overriding considerations the trial judge may not communicate with the jury other than in open court or in the presence of, or with consent of, counsel, and if he does so, it is reversible error." *Id.* at 465.

On the other hand, the Supreme Court in *Guy v. Vieth*, stated a different rule without specifically overruling the holding in *McBride*. There the court said:

The best position seems to us to be that a trial judge's *ex parte* communication with a jury in the civil case does not require reversal per se, but reversal is required where a *timely* complaining party shows specific prejudice or where, owing to the nature of the *ex parte* communication, the reviewing court is unable to determine whether the action was actually harmless. 754 S.W.2d at 605.

■ This case is different from *McBride v. Allen.* Here the trial judge's communication was with jurors who had served in another case, not the jurors already sworn and deliberating in a case over which the trial judge presided. In a situation like the one in *McBride*, we presume that the judge's communication was harmful. Here the harm was potential only because the communication was with jurors who might or might not be called in another case. Therefore, we do not think that the judge's action in this case is reversible per se. Since the defendant has not shown any specific harm, we find the defendant's arguments on this issue to be unpersuasive.

### E.

Finally, the defendant asserts that the trial judge denied it a fair trial by interrupting counsel for the defense and arguing the plaintiff's side of the issues, by failing to act impartially, and by commenting on the evidence.

It is axiomatic that every litigant is entitled to a trial presided over by an impartial judge. *Leighton v. Henderson*, 220 Tenn. 91, 414 S.W.2d 419 (Tenn.1967).

■ We will group the complaints under several headings. The first complaints concern statements made by the trial judge in chambers during a conference just prior to the trial. The plaintiff made a motion in limine to keep the defendants from referring to the treatment of the plaintiff by a doctor in 1982. The defendant contended that the doctor's records or the hospital records might be admissible under the Uniform Business Records as Evidence Act. The court said:

That is not an exception to the hearsay rule in the court's opinion, and I would rule very promptly on that, because this comes up all the time now. The insurance companies spend a lot of money trying to dig up things that happened years ago, and they want to come in and get it in without, you know, spending a

few more thousand bucks. But they are not going to do it in here.

Later, in response to an assertion by defense counsel that he was only interested in relevant facts, the trial judge said:

I'm sure you are. I'm kidding around a little bit. I will just have to wait and see. A lot of times we're going far afield in these cases today. It is just a little simple rear-ender, but they end up being great big lawsuits over things that happened and didn't have a thing to do with the wreck.

Following that statement, the judge and counsel for the defendant engaged in a friendly discussion of how human weaknesses made big problems out of little ones.

In discussing the defendant's contention that the injuries of which the plaintiff complained were all caused in prior accidents, the following discussion took place:

MR. ORTALE: I believe that is the plaintiff's contention, is an aggravation of a pre-existing condition. The defendant's contention—and I think we're trying to set the issues at this time—is that this plaintiff was not injured in this accident and that this laminectomy was nothing more than a continuation of the pre-existing problem. That is the issue. Those are the issues.

THE COURT: You admit your man hit him in the rear sitting still. You're getting pretty bold.

MR. ORTALE: There is a problem in the facts where a man says the plaintiff stopped quickly and told him that he had to stop quickly because somebody did something ahead of him and didn't give him—

THE COURT: Are you relying on sudden emergency?

MR. ORTALE: Yes.

THE COURT: They do that in every case now. I am used to it.

Since these statements all took place outside the presence of the jury, the jury could not have been prejudiced by them. We assume, therefore, that the defendant cites these examples as proof of the trial judge's bias. We will, therefore, consider this evidence in our consideration of the record as a whole.

The second set of complaints concerns the trial judge's interruption of defense counsel's statement made during voir dire. When defense counsel asked the panel if any of them would have any trouble coming back with a finding that the accident did not cause the plaintiff's back problems, the trial judge interrupted and said, "But you've got to take into consideration the aggravation. That is why I let him go ahead." Again, as defense counsel asked the panel if they would be confused by the defense calling two of the plaintiff's treating doctors, the judge broke in and said, "Well, they shouldn't be anybody's doctor. They ought to just give their opinion about what they examined. The doctor is not for or against anybody I wouldn't think."

The first incident followed an objection raised by defense counsel during the plaintiff's questions to the panel on the subject of the pre-existing injury. Taken in context, we think the comment was just a further clarification of the trial judge's previous ruling.

While the second interruption may be viewed as aggravating, unnecessary, and unduly intrusive in the process of voir dire, we do not think it amounts to reversible error.

The remaining complaints concern incidents that occurred during the opening statements and closing arguments and while the jury was out.

During defense counsel's opening statement, the trial judge refused to allow him to list some dates on the board.

With the jury out, the trial judge remarked that to him it was the clearest case on aggravation of a pre-existing injury that he had ever seen.

During the reading of a deposition by defense counsel, the judge admonished him not to raise his voice in the manner he was doing it.

At the close of all the proof, the trial judge said outside the presence of the jury that it was a clear case of liability.

 We see no prejudice to the defense flowing from any of these incidents. The trial judge has wide discretion in his conduct of the trial. *Cordell v. Ward School Bus. Mfg., Inc.,* 597 S.W.2d 323 (Tenn.App. 1980); *Wilson v. Maury County Bd. of Ed.,* 42 Tenn.App. 315, 302 S.W.2d 502 (1957).

The most serious complaint in this category, however, occurred during closing arguments when defense counsel was arguing the credibility of the plaintiff and referring to the fact that he had distorted the amount of medical expenses in the answer to the defendant's interrogatories. The trial judge interrupted the argument and said, "He explained now that they were just asking for $500. I brought that to your attention at the time." Counsel resumed his argument and the following exchange took place:

MR. ORTALE: Ladies and gentlemen, I'm talking about the credibility of Mr. Marress. Mr. Marress made a statement that was completely contradictory prior to this lawsuit under oath, completely contradictory to what he said on this witness stand. That is what I'm talking about, the credibility. And if that is what he said before and now he says something different, you are permitted to consider that in determining credibility.

THE COURT: But you must consider that his attorney asked him to get it. His attorney wrote a letter, and he didn't ask for the entire amount. That is the point I'm making.

MR. ORTALE: Your Honor, I—

THE COURT: Go ahead.

MR. ORTALE: I would like to object to the Court interjecting itself into the discussion concerning facts again.

THE COURT: Well, I had to then because I brought that to your attention at the time it happened.

 In making the comments shown above, the trial judge stated his view of what the evidence showed on the point being argued by counsel for the defense. The trial judge's view, as it turns out, was erroneous and we think it was error to interrupt counsel's argument and comment on the evidence. *See Cleckner v. Dale,* 719 S.W.2d 535, 541 (Tenn.App.1986).

 We are not convinced, however, that the error is reversible. While there is a strong policy in this state against a trial judge making statements in the presence of the jury on questions of fact, Tennessee Constitution, Article VI Sec. 9, *Bass v. Barksdale,* 671 S.W.2d 476 (Tenn.App. 1984), it must appear, considering the whole record, that the error more probably than not affected the judgment. Tenn.R. App.P. 36(b).

We have reviewed the record with this error in mind, along with the charge that the trial judge's bias or prejudice denied the defendant a fair trial, and we do not find that the charge is sustained or that any of the alleged errors more probably than not affected the judgment.

The judgment of the court below is affirmed and the cause is remanded to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant.

LEWIS and KOCH, JJ., concur.