# IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **ALLEN W. LAWRENCE**, | ) | Tipton County Circuit Court |
|  | ) | No. 4544 |
| Plaintiff/Appellee. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9801-CV-00020 |
|  | ) |  |
| **TOWN OF BRIGHTON**, | ) |  |
|  | ) |  |
| Defendant/Appellant, | ) |  |
|  | ) |  |
| AND | ) |  |
|  | ) |  |
| **GLENDA CHANDLER as Natural** | ) |  |
| **Parent and Guardian and Next Friend** | ) |  |
| **on Behalf of JAMES M. CHANDLER**, | ) |  |
| **a Minor Child and Individually, in her** | ) |  |
| **own right**, | ) |  |
|  | ) |  |
| Plaintiff/Appellee, | ) |  |
|  | ) |  |
| VS. | ) |  |
|  | ) |  |
| **TOWN OF BRIGHTON**, | ) |  |
|  | ) |  |
| Defendant/Appellant. | ) |  |

FILED

**October 28, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Circuit Court of Tipton County at Covington.
**Honorable Joseph H. Walker, III, Judge**

**John D. Burleson**,
**Jeffery G. Foster**,
RAINEY, KIZER, BUTLER, REVIERE & BELL, P.L.C., Jackson, Tennessee
Attorneys for Defendant/Appellant.

**J. Houston Gordon**, Covington, Tennessee
Attorney for Plaintiffs/Appellees.

OPINION FILED:

**AFFIRMED AS MODIFIED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

## I. Factual and Procedural History

On May 22, 1996, a collision occurred between a vehicle driven by Allen W. Lawrence and a vehicle driven by Richard Drumwright, an employee of the Town of Brighton. Lawrence's sister Glenda Chandler and Chandler's three year old son James M. Chandler were passengers in the Lawrence vehicle.

Following the accident, Lawrence received treatment at Tipton County Hospital for a cut on his forehead. Two days later, Lawrence was treated by Dr. Reuben Avila for neck pain, tenderness of the abdomen, tenderness over the cut on his forehead, scattered lacerations, a large bruise on his left shoulder, and bruising on his forehead and under his left eye. Dr. Avila recommended that Lawrence take over-the-counter pain medication. Lawrence visited Dr. Avila on two subsequent occasions for persisting headaches and neck pain. Dr. Avila recommended that Lawrence undergo outpatient physical therapy. After receiving a report from Lawrence's mother that Lawrence was experiencing numbness in his left leg, Dr. Avila referred Lawrence to Dr. Lance Wright, a neurologist. Dr. Wright prescribed various medications for pain relief and ordered physical therapy. During a subsequent visit to Dr. Avila, Lawrence complained of knee pain and decreased sensation in his left leg. Dr. Avila referred Lawrence to Dr. Jim Harkness who ordered continued physical therapy and nerve blocks to relieve Lawrence's pain. On January 18, 1997, Lawrence died as a result of a heart attack.[1] At the time of his death, Lawrence was laid off from his job as a full time production worker or packaging operator at Coors Brewing Company.

Glenda Chandler was also examined at the Tipton County Hospital following the accident. An emergency room physician prescribed muscle relaxants and pain medication for deep

---

[1]Lawrence's complaint was filed on June 20, 1996. His death occurred thereafter on January 18, 1997. When a party entitled to relief dies while an action for personal injuries is pending, the party's claim does not abate but becomes an action for the benefit of the deceased party's estate. *See* Tenn. Code Ann. § 20-5-112 (1994). The procedural steps for substitution of parties in such cases are outlined in Rule 25 of the Tennessee Rules of Civil Procedure. *See* T.R.C.P. 25.01(1). Our review of the record reveals that Thelma Lawrence, Lawrence's mother, was appointed as the administrator of his estate. It further reveals that counsel for Lawrence and Chandler understood that Lawrence's claim was being brought on behalf of his estate. It does not appear, however, that any of the steps enumerated in Rule 25 have been taken to make Lawrence's estate a party to this lawsuit. Because no issue has been raised on appeal with respect to substitution of parties, we make no finding regarding this matter.

cuts on Chandler's left arm and hand and a possible partial dislocation of her left elbow. Two days after the accident, Chandler was examined by Dr. Phillip Wright, an orthopedic surgeon, who recommended that Chandler wear a sling for support and a splint or supporting brace on her forearm and wrist to ease discomfort. During a second visit with Dr. Wright, Chandler complained of pain in her knees. Dr. Wright recommended physical therapy. When, during a follow up visit, Chandler complained that the discomfort in her elbow and knees had worsened, Dr. Wright gave her some samples of anti-inflammatory medication. Chandler also saw Dr. Crockarell, a neurologist, for persisting headaches. Dr. Crockarell advised Chandler to take Advil as needed for pain.

Lawrence and Chandler each filed a complaint against Drumwright and the Town of Brighton. By consent, Drumwright was dismissed from both actions. Consent orders were entered in both actions granting the Town of Brighton's motions to strike the jury demands of Lawrence and Chandler.[2]

The actions of Lawrence and Chandler were consolidated for purposes of trial. The parties stipulated that the collision was the result of negligence on the part of Drumwright while driving a vehicle owned by the Town of Brighton. Thus, the sole issue at trial was the extent of the damages suffered by Lawrence, Chandler, and Chandler's minor son.[3] The trial judge assessed the damages of Lawrence and Chandler as follows:

Damages of Allen W. Lawrence:

---

[2]The orders dismissing Drumwright and striking the jury demands were entered pursuant to the Tennessee Governmental Tort Liability Act. The relevant provisions of this act provide in pertinent part as follows:

> No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter unless the claim is one for medical malpractice brought against a health care practitioner.

Tenn. Code Ann. § 29-20-310(b) (Supp. 1998).

> The circuit courts shall have exclusive original jurisdiction over any action brought under this chapter and shall hear and decide such suits without the intervention of a jury, except as otherwise provided in § 29-20-313(b).

Tenn. Code Ann. § 29-20-307 (Supp. 1998).

[3]The award to the minor child is not an issue on appeal.

| | |
|---|---|
| Medical Services | $10,268.40 |
| Travel | $320.60 |
| Loss of Earning Capacity | $23,000.00 |
| Pain and Suffering | $21,500.00 |
| Loss of the Ability to Enjoy Life | $17,500.00 |

TOTAL:               $72,589.00


Damages of Glenda Chandler:


| | |
|---|---|
| Medical Services | $4,577.75 |
| Travel | $252.00 |
| Child Care | $217.00 |
| Past Pain and Suffering | $10,500.00 |
| Future Pain and Suffering | $8,900.00 |
| Permanent Impairment-Disfigurement | $28,000.00 |
| Past and Future Loss of the Ability to Enjoy Life | $17,500.00 |

TOTAL:               $69,946.75


The Town of Brighton appeals the trial court's ruling in both causes of action.


The issues presented on appeal are as follows:


I. Did the trial court err in awarding Lawrence $23,000 for loss of earning capacity?

II. Is the award of $21,500 to Lawrence for pain and suffering excessive?

III. Did the trial court err in awarding Lawrence and Chandler $17,500 each for loss of ability to enjoy life?

IV. Is the award of $28,000 to Chandler for permanent impairment-disfigurement excessive?

V. Are the awards to Chandler of $10,500 for past pain and suffering and $8,900 for future pain and suffering excessive?


As an initial matter, we note that the issues raised on appeal all relate to the trial court's assessment of the damages suffered by Lawrence and Chandler as a result of the negligence of Drumwright. Under Tennessee law, there are no mathematical rules for computing damages in negligence cases. *See Brown v. Null,* 863 S.W.2d 425, 429-30 (Tenn. App. 1993); *Smith v. Bullington,* 499 S.W.2d 649, 661 (Tenn. App. 1973); *Clinchfield R.R. Co. v. Forbes,* 417 S.W.2d

210, 217 (Tenn. App. 1966); *Templeton v. Quarles,* 374 S.W.2d 654, 660 (Tenn. App. 1963); *France v. Newman,* 248 S.W.2d 392, 396 (Tenn. App. 1952). The amount to be awarded in such cases is primarily within the discretion of the trier of fact. *See Brown,* 863 S.W.2d at 430(citing *Lunn v. Ealy,* 141 S.W.2d 893, 894 (Tenn. 1940); *Shell Oil Co. v. Blanks,* 330 S.W.2d 569, 573 (Tenn. App. 1959)). Accordingly, we may not substitute our judgment for the judgment of the trial court regarding the amount of damages unless there has been an abuse of discretion. *See Dixie Feed & Seed Co. v. Byrd,* 376 S.W.2d 745, 754 (Tenn. App. 1963). Consistent with these principles, our review in the instant case is *de novo* on the record, accompanied by a presumption of correctness of the findings of the court below. Thus, we may only reverse the trial court's findings if they are contrary to the preponderance of the evidence. *See* T.R.A.P. 13(d); *Smith,* 499 S.W.2d at 661(discussing Tenn. Code Ann. § 27-303 (Supp. 1977), which has been incorporated into T.R.A.P. 13(d)).

## II. *Award to Lawrence for Loss of Earning Capacity*

In an action for personal injury in Tennessee, a plaintiff may recover damages for loss of earning capacity. *See Marress v. Carolina Direct Furniture, Inc.,* 785 S.W.2d 121, 123 (Tenn. App. 1989); *Clinchfield R.R. Co.,* 417 S.W.2d at 215; *Southern Coach Lines, Inc. v. Wilson,* 214 S.W.2d 55, 56 (Tenn. App. 1948). Damages for lost earning capacity are measured not by the amount of the plaintiff's lost wages but by the extent of impairment to the plaintiff's ability to earn a living. *See Terminex Int'l Co. Ltd. Partnership v. Tennessee Ins. Guar. Ass'n,* 845 S.W.2d 772, 777 (Tenn. App. 1992); *Dingus v. Cain,* 406 S.W.2d 169, 171 (Tenn. App. 1966); *Clinchfield R.R. Co.,* 417 S.W.2d at 215; *Dixie Feed & Seed Co.,* 376 S.W.2d at 749; *Southern Coach Lines, Inc.,* 214 S.W.2d at 56. Thus, a plaintiff may recover damages for lost earning capacity even where the plaintiff was unemployed at the time of the injury. *See Southern Coach Lines, Inc.,* 214 S.W.2d at 57. In determining the extent of a plaintiff's loss of earning capacity,

> it is proper to take into consideration plaintiff's age, and in like manner, attention may be brought to his health, character, capacity, ability to work, intelligence, skill, talents, experience, training, and industry. In addition, it is proper to consider plaintiff's habits, and other personal qualities. Other matters to be considered are plaintiff's surroundings, record of employment, and station in life, his expectancy of life, his occupation, business or profession, the effect

of the injury thereon, the value of his services, avenues of occupation open to him, and the physical capacity of plaintiff to perform his work at the time he was injured and thereafter.

*Marrass,* 785 S.W.2d at 123-24; *Clinchfield R.R. Co.,* 417 S.W.2d at 215; 25 C.J.S. *Damages* § 87(b) (1966). The role of the trier of fact is to consider all evidence regarding these and other relevant factors, giving proper weight to each item of proof as it deems appropriate. *See Clinchfield R.R. Co.,* 417 S.W.2d at 215.

In the instant case, Lawrence had been employed by Coors Brewing Company as a full time production worker or packaging operator since May 13, 1985. Lawrence was laid off from this position on October 9, 1995, some seven months prior to the accident. Coors recalled a group of employees that would have included Lawrence on May 27, 1997. Lawrence had died, however, on January 18, 1997. Had he been living, Lawrence's wage after being recalled would have been $17.25 per hour.

There was ample testimony upon which the trial judge could have made a determination regarding the physical capabilities of Lawrence as they existed both prior to and following the accident. According to Lawrence's medical records, he had a history of high blood pressure and migraines but had no other physical problems prior to the accident. Lawrence's mother testified that, prior to his injuries, Lawrence engaged in a variety of activities, including the following: raising dogs, running and playing with children, cooking, cleaning, shopping, taking care of the yard, and lifting weights. She further testified that, after the accident, Lawrence was unable to engage in these activities because of pain. Lawrence's brother confirmed his mother's statements regarding Lawrence's ability to do yard work, go shopping, and wrestle with children and added that "[a]fter the accident, you took a person that was a bull with the strength of an ox and you made him down to a mouse with no strength at all." He further added that Lawrence was no longer able to drive when they would go to Memphis on shopping trips. Finally, a family friend testified that, before the accident, Lawrence was a "pretty stout man" that led a "pretty physical life." He added that, after the accident, Lawrence was not as physical and had a lack of stamina.

The Town of Brighton takes the position that, because no expert testimony was

presented specifically addressing the issue of lost earning capacity, the trial court should have found that Lawrence did not sustain such a loss. While expert testimony is often helpful in determining the extent of a plaintiff's loss of earning capacity, it is not a prerequisite to recovery. *See Marress,* 785 S.W.2d at 124 (finding that lay testimony regarding plaintiff's ordinary pursuits before and after accident was sufficient to show that plaintiff sustained a loss of earning capacity). The Town of Brighton further argues that Lawrence is not entitled to recover for lost earning capacity because he did not sustain a permanent impairment. We have previously stated, however, that the principle underlying recovery for lost earning capacity is the same whether the impairment is permanent or only temporary. *See Dingus,* 406 S.W.2d at 171; *Southern Coach Lines, Inc.,* 214 S.W.2d at 56.

The undisputed testimony in the instant case reveals that Lawrence was physically unable to engage in many of the activities that he enjoyed prior his injuries. Based on this testimony, it appears likely that, had Lawrence been employed following the accident, his physical injuries would have at least impaired his work performance. The trial judge concluded that Lawrence suffered a $23,000 loss of earning capacity. We find that the evidence does not preponderate against this conclusion. Thus, we uphold the trial court's ruling with respect to Lawrence's lost earning capacity.

### III.  Award to Lawrence for Pain and Suffering

The trial judge awarded Lawrence $ 21,500 as compensation for his pain and suffering. The Town of Brighton contends that, because Lawrence's injuries healed over time, this amount is excessive.

There is a substantial amount of evidence in the record regarding the pain experienced by Lawrence during the eight months that he lived following the accident. In the days immediately after the accident, Lawrence experienced tenderness of his abdomen and forehead and felt pain from various cuts and bruises. He also suffered from neck pain and burning sensations in his left leg and hip. His neck and leg would hurt when he tried to remove big pots and pans from the oven. He also felt pain in his leg when he attempted to pick up or play with children. The pain in his left leg was so intense that he was no longer able to sleep in a bed because he might roll over onto his left side.

Finally, Lawrence developed pain in his left knee and experienced numbness in his left thigh.

In light of the aforementioned proof, we find that a judgment in the amount of $21,500 for Lawrence's pain and suffering is neither excessive nor contrary to the preponderance of the evidence. Accordingly, we uphold the trial court's ruling with respect to the damages awarded to Lawrence for pain and suffering.

### IV. Awards to Lawrence and Chandler for Loss of Ability to Enjoy Life

The trial court awarded $17,500 to both Lawrence and Chandler for loss of the ability to enjoy life. The Town of Brighton first contends that damages for loss of enjoyment of life are not recoverable in personal injury cases under Tennessee law. Alternatively, the Town of Brighton argues that, even if this type of damages is recognized in Tennessee, the awards granted by the trial court to both Lawrence and Chandler were excessive.

In support of its argument, the Town of Brighton relies principally on the case of *Spencer v. A-1 Crane Service, Inc.,* 880 S.W.2d 938 (Tenn. 1994). In *Spencer*, the Tennessee Supreme Court held that hedonic damages are not recoverable under Tennessee's wrongful death statute. *See id.* at 943-44. The *Spencer* court understood the phrase "hedonic damages" to refer to "the value of the pleasure, the satisfaction or the utility that human beings derive from life, separate and apart from labor or earnings value of life." *Id.* at 939. Under this definition, "hedonic damages" are similar to damages for loss of enjoyment of life. Nevertheless, we find that, because the holding in *Spencer* relied on statutory interpretation, it is limited in scope to wrongful death actions and thus is not directly applicable to the case at bar.

The Town of Brighton argues that the holding in *Spencer* was extended to other types of actions in the case of *Miller v. Niblack,* 942 S.W.2d 533 (Tenn. App. 1996). In *Miller,* we held that a mother and her nonmarital child could not recover hedonic damages against a laboratory that negligently performed a paternity test on the child's putative father. *See id.* at 542. Unlike the court in *Spencer*, however, we understood the plaintiff's request for "hedonic damages" to be essentially a claim for loss of the parent-child relationship. *See id.* at 542 n.6. *Miller*, then, is not a true "loss

of enjoyment of life" case. Thus, we find that the holding of *Miller* is inapplicable to the case at bar.

Tennessee courts have historically recognized loss of enjoyment of life as a distinct category of damages in personal injury cases. *See Thompson v. National R.R. Passenger Corp.,* 621 F.2d 814, 842 (6th Cir. 1980)(applying Tennessee law in personal injury action). In the recent case of *Livingston v. Upper Cumberland Human Resource Agency,* No. 01-A-01-9609-CV-00391, 1997 WL 107059 (Tenn. App. Mar. 12, 1997), we upheld a damage award for loss of enjoyment of life where, as a result of the plaintiff's injuries, he could no longer engage in athletic activities to the same extent as before his accident. *See id.* at *2. In *Martin v. Southern Ry. Co.,* 463 S.W.2d 690 (Tenn. 1971), the court upheld a jury award in a personal injury action after assuming that a portion of the award was for intangible damages including "deprivation of the normal enjoyments of life." *Id.* at 691. Finally, in *Dixie Feed & Seed Co. v. Byrd,* 376 S.W.2d 745 (Tenn. App. 1963), also an action for personal injuries, the court stated that it did not know the value that the jury may have placed on intangible elements of damage such as "deprivation of the enjoyment of the normal activities of life." *Id.* at 753.

Based on the above authority, we find that damages for loss of enjoyment of life are recoverable in personal injury cases under Tennessee law. We now consider whether the awards for loss of enjoyment of life to Lawrence and Chandler in the instant case are excessive.

Following the accident, Lawrence could not engage in a number of activities without experiencing increased pain. He could no longer raise or care for his dogs. Similarly, he was not able to cook or help his mother with normal household chores. Lawrence could not play with children as he had in the past. He could no longer engage in exercises such as lifting weights, running, and jumping. He could not help his brother with yard work or drive a car to Memphis when he and his brother went shopping together. Finally, he experienced difficulties sleeping and, because lying in bed was uncomfortable, was forced to sleep in a recliner.

The trial court was presented with ample evidence upon which it could have found that Lawrence experienced a significant loss in the ability to enjoy life as a result of the accident. We cannot find that the evidence preponderates against the trial court's ruling with respect to

Lawrence's loss of enjoyment of life. Further, we do not find that, under the circumstances of this case, an award of $17,500 for the loss incurred by Lawrence is excessive.

Our review of the record reveals that Chandler's activities were also somewhat limited as a result of the accident. According to Chandler, it was "a good two months" following the accident before she was able to go about her normal activities again. Specifically, Chandler had difficulty lifting and otherwise taking care of her two children for approximately one to two weeks. She also was unable to sleep on her right side without waking up with a headache. Finally, there is some evidence indicating that she would turn down invitations to "go do something" with her brother because she was in pain. The record also indicates, however, that these limitations on Chandler's activities lasted only for a brief period of time. Chandler eventually regained a full range of motion in her fingers, wrist, and forearm. Although she still is not able to fully straighten out her left elbow, Chandler stated that she is now able to perform all of the activities using her left arm and knees that she was able to perform prior to the accident.

The trial court awarded damages to Chandler for loss of enjoyment of life in an amount equal to those awarded to Lawrence for the same type of damages. We agree that Chandler did experience some loss of enjoyment of life as a result of her injuries. From our review of the record, however, we do not find that her damages are even remotely comparable to those suffered by Lawrence. Accordingly, we conclude that the preponderance of the evidence is contrary to the trial court's implicit finding that Chandler suffered a loss of enjoyment of life equal to the loss suffered by Lawrence. In light of this conclusion, we have determined that the preponderance of the evidence does not support an award to Chandler of $17,500 for her loss of enjoyment of life. Accordingly, we modify the trial court's judgment to award her the sum of $10,000.

### V. Award to Chandler for Permanent Impairment-Disfigurement

Chandler was also awarded $28,000 in damages as compensation for the permanent injuries that she suffered as a result of the accident. The most significant of these injuries appears to be a permanent ten degree loss of range of motion in Chandler's left elbow. Dr. Wright estimated that a ten degree loss of motion of the elbow is equivalent to a one percent impairment of the entire

person. The trial judge observed that Chandler is not able to completely straighten out her left arm, leaving it in a permanently crooked position. In addition to her elbow injury, Chandler has permanent scarring on her wrist, arm, left leg, and right knee as a result of the accident. These scars were also observed by the trial judge.

Chandler testified that she has regained use of her left arm and is now able to use the arm in the same manner as before the accident. The Town of Brighton contends that, because the injury to Chandler's elbow does not limit her activities, she has not suffered an impairment significant enough to justify an award of $28,000. We find, however, that even if the damage to Chandler's elbow and the scars on various parts of her body do not limit her physical activities, they nevertheless constitute a significant impairment to her appearance. The trial judge assessed the damages for Chandler's permanent impairment-disfigurement at $28,000. We cannot find that the preponderance of the evidence is contrary to this assessment. Thus, we uphold the trial court's ruling regarding the amount of damages for Chandler's injuries.

### V. Award to Chandler for Pain and Suffering

Finally, the trial court awarded Chandler a total of $19,400 for past and future pain and suffering. While glass was being removed from Chandler's hands and arms, Chandler experienced so much pain that she began screaming. She experienced muscle strain and tightness in her shoulder. Chandler also suffered dull headaches and tenderness each time she tried to sleep on her left side. For a period of time after the accident, Chandler's knees ached on a daily basis. Chandler described this pain as a sensation of pins and needles in her knees. Chandler's brother testified that when Chandler's knees would pop, she would "do a big moan." Although the injury to Chandler's knees has been successfully treated with medication, she continues to have aching pains in her elbow and wrist approximately twice a week. Additionally, Chandler continues to take over-the-counter medications to relieve her occasional headache pain.

Based on our review of the aforementioned testimony, we agree that Chandler is entitled to compensation for the pain and suffering that she experienced and will continue to experience as a result of the accident. The trial court awarded Chandler $10,500 for past pain and

suffering and $8,900 for future pain and suffering.  The evidence in the instant case does not preponderate against the amount of these awards.  Accordingly, we uphold the trial court's assessment of damages for Chandler's pain and suffering.

## *VI. Conclusion*

We find that the trial court did not err in awarding $23,000 to Lawrence for loss of earning capacity or in awarding $17,500 to Lawrence for loss of ability to enjoy life.  We further find that the $21,500 award to Lawrence for pain and suffering, the $28,000 award to Chandler for permanent impairment-disfigurement, and the $19,400 award to Chandler for pain and suffering were not excessive.  The judgment of the trial court in favor of Chandler of $17,500 for loss of ability to enjoy life is modified to a judgment in the amount of $10,000.

The judgment of the trial court is affirmed as modified and remanded for further proceedings consistent with this opinion.  Costs of this appeal are assessed to the Town of Brighton, for which execution may issue if necessary.

_____
FARMER, J.

_____
HIGHERS, J. (Concurs)

_____
LILLARD, J. (Concurs)