Lewis E. McBRIDE, Plaintiff-Appellee,

v.

Billy G. ALLEN, Jack Wehby Warehouse, Wilco Truck Rental, Inc., Defendants-Appellants,

and

Bobby Witherspoon, Defendant-Appellee.

Ronald SPENCER and Bobby Witherspoon, Plaintiffs-Appellees,

v.

Billy G. ALLEN, Jack Wehby Warehouse, and Wilco Truck Rental, Inc., Defendants-Appellants.

Billy G. ALLEN and Jack Wehby Warehouse, Third-Party Plaintiffs-Appellants,

v.

Bobby W. WITHERSPOON, Third-Party Defendant-Appellee.

Court of Appeals of Tennessee, Middle Section, at Nashville.

December 28, 1979.[1]

Application for Permission to Appeal Denied by Supreme Court March 31, 1980.

---

1. Case designated for publication Nov. 17, 1986.

Sam E. Wallace, Jr., Nashville, for plaintiff-appellee, Lewis McBride.

Edward C. White and James Ransom, Nashville, for plaintiffs-appellees, Ronald Spencer and Bobby Witherspoon.

W.A. Moody, Nashville, for defendants-appellants.

## OPINION

LEWIS, Judge.

Plaintiff Lewis E. McBride sued Billy G. Allen, Jack Wehby Warehouse, Wilco Truck Rental, Inc., and Bobby W. Witherspoon. He alleged that on April 20, 1977, he was operating his vehicle in an easterly direction on Interstate 40 in Davidson County; that defendant Billy G. Allen was operating a tractor-trailer truck owned by Wilco Truck Rental, Inc., and being used in the business of defendant Jack Wehby Warehouse; that defendant Bobby Witherspoon was also traveling east on I–40 in his 1964 Ford van; that, as plaintiff approached the Eighteenth Avenue overpass in Nashville, the truck driven by Allen changed lanes and caused the van driven by Witherspoon to go out of control and strike the vehicle driven by plaintiff; and that as a result of that collision plaintiff suffered property damage and physical injuries.

Ronald Spencer, a passenger in the Witherspoon vehicle, and Witherspoon filed complaints against Allen, Jack Wehby Warehouse, and Wilco Truck Rental and alleged that Allen's negligence in changing lanes caused Witherspoon to collide with the McBride vehicle and that as a result of the collision both Spencer and Witherspoon received injuries and damages.

Billy G. Allen and Jack Wehby Warehouse filed a third-party complaint against Witherspoon and alleged that the negligence of Witherspoon caused the accident. All complaints were consolidated for trial.

The defense of Allen and Jack Wehby Warehouse was that the vehicle driven by Allen was not in any way involved in the accident. There was no contact between the vehicle driven by Allen and either the McBride or Witherspoon vehicles.

These cases were tried before a jury which returned verdicts in favor of plaintiffs McBride and Spencer and defendant Witherspoon against defendants Allen and

Jack Wehby Warehouse. Judgment was entered on the verdicts for plaintiffs and against defendants. Judgment of dismissal was entered in favor of Wilco Truck Rental. From that judgment defendants Allen and Jack Wehby Warehouse appealed and assigned four (4) errors:

1. The Court erred in excluding from evidence pictures presented by the defendants showing a trailer identical to the trailer being pulled by the defendant at the time of the accident.

2. The Court erred in not allowing the introduction into evidence of the loss notice prepared by the defendant driver after the accident.

3. The Court erred in making prejudicial comments to and in the presence of the jury concerning the facts of the case and in commenting on the evidence.

4. The Court committed error by communicating with the jury in the absence of counsel for either party.

■ We find no error in the exclusion of the photograph. " '[T]he question whether an offered photograph is practically helpful or instructive to the jury upon any material issue in the case is a preliminary question to be determined by the trial judge.' " *Strickland Transportation Co. v. Douglas*, 37 Tenn.App. 421, 433, 264 S.W.2d 233, 239 (1953) (quoting C. Scott, *Photographic Evidence* 482 (1942)). Here the witness testified that this photograph showed the same type of trailer but not the same trailer. This photograph was taken on the morning of trial, several months after the accident. We do not hold excluding the photograph was error, but even if it was, in this instance it was harmless error. There was specific testimony from driver Allen and from Mr. Wehby about the markings on the trailer. The jury had the benefit of their testimony along with the testimony of witnesses for plaintiff who testified about markings on the trailer. Assignment of error one is overruled.

■ Assignment of error two is likewise overruled. Defendants say they were prejudiced by not being allowed to show the loss notice prepared by defendant driver, Mr. Allen, after the accident since it would show that he did not report the accident until a statement that he was involved appeared in the newspaper. Defendants contend that, in essence, Allen had no knowledge of his involvement until he became aware of the newspaper article. Mr. Allen's testimony does not support this contention. He was asked on cross-examination by Mr. Wallace:

Q. And you didn't learn that—that you were suspected to be involved until the following day; is that correct?

A. I know the officer wanted to see my trailer. And he went down to check it out to see if there was any paint. He said he had a eye-witness after he talked to me that said I was the one that done it.

Q. All right. And he did go down and look at your truck; didn't he?

A. Yes sir.

Q. Didn't that give you some idea that you might, possibly, be suspected of being involved?

THE COURT: He said the officer told him he had an eye-witness that said he did.

Q. (By Mr. Wallace) So, you had an idea on that day; did you not?

A. I didn't know there would be a lawsuit, or anything. I turned it into the insurance agent the next morning.

Q. You waited until another day. You didn't tell you boss about it that day.

A. Told my boss the next morning. It was in the paper and I went and filled out a accident report.

Mr. Allen knew that at the scene of the accident there was a witness who stated that he was involved in the accident. To say now that the only reason he reported the accident was because of an article in the newspaper is wholly without merit.

By their third assignment, defendants allege that the Court made prejudicial comments regarding facts of the case to and in

the presence of the jury. We have carefully reviewed this record and find that most of defendants' complaints about the Court's comments are without merit. We are of the opinion that the following comments were prejudicial.

MR. WHITE: As a result of talking to each one of these parties involved in this collision, and an independent witness, and as a result of your ten years experience as a police officer, and your schooling as a police officer, did you reach a conclusion as to the cause of this accident?

THE WITNESS: Yes, sir; I did.

MR. MOODY: Judge, you just ruled that when the jury was out as being based on hearsay. It is inadmissible.

THE COURT: Now, Mr. White—now, I'll have to sustain the objection. You're not permitted to draw conclusions like that, except in very special cases. Doctors—experts are the only ones that are permitted to do that.

MR. WHITE: I hoped he would be an expert, Your Honor.

THE COURT: Well, you know that they—I think he's an expert, but the fellows up on the hill haven't recognized him as such yet.

. . . .

MR. MOODY: All right, sir. Let's look at another thing. These three lanes coming into town (indicating) at the time of this accident, say 2:10 on April 20th, wouldn't it be fair to say, from your knowledge of traffic, that there's tractor trailers every thirty or forty feet. That there's just a number of tractor-trailers going east-bound on 40 at all times during the day?

MR. WALLACE: Your Honor, that's not relative to this.

MR. MOODY: I'm going to make that relative, Judge.

MR. WALLACE: Well, that's not a relevant question on its face. We all know what the traffic situation on the interstates are and that's just not relevant.

THE COURT: Why do you want—I think we would all agree that the interstates are crowded.

MR. MOODY: Another trucker caused this accident, if a truck caused the accident.

MR. WHITE: I'm sorry. Repeat that.

THE COURT: He said another truck caused the accident, but we got an eyewitness, as I understand it—

MR. MOODY: The eye-witness hasn't testified yet, Judge.

The investigating officer had testified about the length of time he had been in the traffic department and his attendance for two days at the Police Academy Traffic School. No attempt had been made to qualify him as an expert. He had not been tendered to the Court as an expert. Jurors attach great weight and significance to statements of the Trial Judge. For him in this instance to imply, under the circumstances, that the traffic officer was an expert was a prejudicial comment.

The defense of defendants was that they were not involved in this accident and that, if this accident was caused by a tractor-trailer, it was caused by one belonging to someone else. The question, therefore, before the jury was a question of fact, whether or not defendants were involved in the accident. Defendants were attempting to show that many tractor-trailers were on the highway and that the accident easily could have been caused by one of them. The comment of the Trial Judge, "we got an eye-witness," could have given the jury the understanding that this "eye-witness" was to be believed over other witnesses.

"The constitutional guaranty of a trial by jury requires the judge to be extremely careful to not express an opinion on any fact to be passed on by the jury." *McCay v. Mitchell*, 62 Tenn.App. 424, 448, 463 S.W.2d 710, 721 (1970). The trial judge should be most cautious of making any remarks or of injecting himself into direct or cross-examination. The trial judge "should instruct the jury upon the principles of law, and leave them to pass upon the facts." *Robertson v. Louisville &*

*Nashville Railroad,* 70 Tenn. 594, 597 (1879).

The trial Judge should always be extremely careful not to express or intimate any opinion on any fact to be passed upon by the jury. It has been said by this Court: "It is natural that jurors should be anxious to know the mind of the Court and follow it; therefore, the Court cannot be too cautious in his inquiries." *McDonald v. State,* [89 Tenn. 161, 164, 14 S.W. 487, 488 (1890) ]. *Graham v. McReynolds,* 90 Tenn. 673, 684–85, 18 S.W. 272, 275 (1891). Furthermore, the court in *Mayor and City Council of Nashville v. Patton,* 2 Tenn.Ct.Civ. App. 515, 525–26 (1910), said:

Judges should say and do nothing that is calculated to impress a jury favorably or unfavorably with the contentions made. It should be kept uppermost in mind that juries are called in to decide exclusively the facts of the case, under his supervision as the source of the law; that it [is] in his province to lay down the rules of law governing the parties without bias and without interference in finding the facts. In the instant case the learned Circuit Judge was impressed that the contentions of the city were unsound, and it is true that a great many of them were; but nevertheless it was entitled to its unhampered opportunity to present its contentions of law to the Court and of the facts to the jury. Juries eagerly seize upon any intimation from the Court as to his views of a case; and sometimes a mere word or look from him may be of sufficient import to turn the scales in favor of the one or the other party. At the same time judges must not be figureheads, and must not have the time of the Court consumed in needless wrangling, and must not permit impositions upon the jurors of false and flimsy and baseless contentions. But judges must not charge juries with respect to matters of fact; and this constitutional rule forbids side remarks and prejudicial statements and volunteered information just as much as direct instructions with reference to the facts. The Judge must hold in reserve the culminating judgment until the triers of the fact shall have, uninfluenced, fixed the blame.

Assignment of error three is sustained.

█ By their fourth assignment, defendants complain that the Court committed error by communicating with the jury in the absence of counsel for the parties. The Trial Judge was in the jury room with the jury and was awaiting arrival of counsel in order to further instruct the jury pursuant to its request on its second day of deliberations. After counsel arrived, the Trial Judge gave the instructions requested by the jury. After these instructions were given, Mr. Henard, one of defendants' attorneys, stated to the Trial Judge that he had another matter he would like to discuss out of the presence of the jury. The following colloquy occurred in the Judge's Chambers:

MR. HENARD: Your Honor, I don't want to follow in the steps of Mr. Moody yesterday, but I couldn't help but overhear you while I was in the hall on instructing that holding out on a case from decision is some sort of an out-law.

THE COURT: You're just as mistaken as you can be. I'd just like to correct you. They asked me while we were trying to get the lawyers, if this jury was staying out longer than most jurys to decide a case. I said that usually the jury returns a verdict in a shorter amount of time. Yes, I said, but you have people on the jury every now and then that just like to argue.

MR. HENARD: I feel that I must move for a mistrial on that basis.

THE COURT: Let the record show that has been over-ruled.

Failure to grant the mistrial was assigned as error, and, in support of the motion for a new trial, the following affidavit was submitted:

I, Gloria Dillard, make oath that the following statements are not stated verbatim, but are true to the best of my knowledge, information and belief.

That on March 8, 1979, in the cases of Spencer, McBride and Witherspoon v. Jack Wehby Warehouse, et al. Nos. C–5487, C–2737, and C–5488, I was the Court Reporter engaged to transcribe the testimony in the case, and on that date I was in a position where I could overhear a conversation between the trial judge, Judge Harry Lester, and members of the jury on that case. This conversation was in the jury room with the jurors and the Judge being in the jury room during deliberations and there was no attorney for either the plaintiff or the defendant in or near the jury room. I do not know where they were, but I understand on information and belief that they were absent on a lunch recess.

The discussion to the best of my knowledge and memory was as follows:

JUROR: Does it always take this long for a jury to decide a case?

JUDGE LESTER: No, it doesn't. But every now and then you'll get someone on the jury that just likes to argue.

/s/ Gloria Dillard
Gloria Dillard

Sworn to and subscribed before me, this 12th day of April, 1979.

/s/ Pamela J. Brown
Notary Public

My commission expires 10/17/82.

That the Trial Judge made this statement in the jury room out of the presence of counsel is not in dispute.

In the majority of cases considering the question, any communication between the trial judge and the jury or members thereof after submission of the case, elsewhere than in open court, or in the presence, or with the consent of, counsel, has been regarded as reversible error, either on the general ground of resulting prejudicial effect or because of rules of procedure or statutory provisions.

41 A.L.R.2d 288, 306.

The reason for this rule is stated in *Danes v. Pearson,* 6 Ind.App. 465, 33 N.E. 976, 978 (1893):

But a judge of the court occupies a different attitude towards the jury from that of any other person. In the heat and passion often engendered on the trial, in the conflicting arguments and statement of law by opposing counsel, the jury naturally look to the court to bring certainty out of the confusion. An act, a sentence, or a word from the presiding judge may exert a controlling influence on the verdict. It is for these reasons that a communication by the judge to the jury stands on a different basis from that of another person, and for a like reason the law should throw a higher degree of circumspection around such communications.

In *Glendenning v. Sprowls,* 405 Pa. 222, 174 A.2d 865, 866 (1961), the court stated:

It has been wisely stated that "Next to the tribunal being in fact impartial is the importance of it appearing so." *Shrager v. Basil Dighton, Ltd.* (1924) 1 K.B. 274, 284. This applies in a special way to the Judge and his relationship with the jury. Without doubting the worthy motives or the well-intentioned solicitude of the Judge for the wishes and welfare of the jurors, private communication by a Judge to or with a jury in the jury room and in the absence of counsel is almost certain to create suspicion and a belief of unfairness in the minds of many people.

The Alabama Supreme Court, in *Feibelman v. Manchester Fire Insurance Co.,* 108 Ala. 180, 19 So. 540, 549–50 (1896), said:

We cannot inquire, in such a case, what instructions were given by the court to the jury,—whether they were correct or incorrect, prejudicial or otherwise.... The only safe course, therefore, when it is established that the court, without some overruling necessity therefor, gave instructions to the jury ... in the absence of the complaining suitor's counsel, engaged in representing him on the trial, and without reasonable notice to them and opportunity to be present, is to withhold all inquiry and investigation into the correctness of the

instructions or action of the court, and treat them as conclusively prejudicial by reason of the suitor's deprivation of his constitutional right.

The Iowa Supreme Court, in addressing this question, stated:

> Whether or not injury or injustice has resulted to the litigants by reason of the conduct, is not our primary concern. Rather, our concern is with the implication that attaches to the administration of justice under these circumstances. Confidence in our judicial system is imperiled if such conduct is countenanced in jury trials. Conduct which if proved would give rise to doubt and disrespect, or the mere appearance of such conduct as will not meet with the approval or public opinion, must be severely condemned. It is only through the granting of a new trial in situations like this, as well as vigilant efforts by the officers of the court to prevent such occurrences, that public confidence in the jury system may be preserved.

*Daniels v. Bloomquist*, 258 Iowa 301, 138 N.W.2d 868, 872 (1965).

We hold that in the absence of overriding considerations the trial judge may not communicate with a jury other than in open court or in the presence of, or with consent of, counsel, and if he does so, it is reversible error. Assignment of error four is sustained.

Plaintiffs Spencer and Witherspoon have filed a "Request of the Appellees for Relief from the Judgment and Brief of the Appellees with Answer to the Brief of the Appellants." They complain that the trial Court erred in refusing to grant a default judgment and attorneys fees upon the refusal of defendants to give discovery and that the Court erred in allowing defendants to testify after the Court learned that defendants refused to give discovery. Our review of this record fails to persuade us that defendants refused to give discovery. Plaintiffs argued the issue for some three and a half pages in their brief, but we are not shown where in the record there was a refusal. Further, even if there was a refusal, no showing is made that these plaintiffs were prejudiced. We find no merit to these plaintiffs' contentions.

The judgment of the Trial Court is reversed, and the cause is remanded for a new trial.

TODD and DROWOTA, JJ., concur.