# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**February 11, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

CECILIA KANBI,                    )
                                  )
    Plaintiff/Appellee,          )
                                  )   Appeal No.
                                  )   M1999-00025-COA-R3-CV
VS.                               )
                                  )   Davidson Circuit
                                  )   No. 97C-778
PATRICIA J. SOUSA,               )
                                  )
    Defendant/Appellant.         )


APPEALED FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE CAROL L. SOLOMAN, JUDGE


J. MITCHELL GRISSIM, JR.
JOHN P. SHEAHAN, JR.
325 Union Street
Nashville, Tennessee 37201
    Attorneys for Plaintiff/Appellee

JAMES C. MCBROOM
211 Printers Alley, Suite 502
Nashville, Tennessee 37201
    Attorney for Defendant/Appellant


AFFIRMED AND REMANDED


BEN H. CANTRELL,
PRESIDING JUDGE, M.S.


CONCUR:
CAIN, J.
COTTRELL, J.

# O P I N I O N

In this auto accident case, the jury found the defendant liable for the plaintiff's injuries, and the trial court entered a judgment on the verdict. The sole issue on appeal is whether the judge's comments from the bench during the testimony of the defendant constituted reversible error. Under the circumstances of this case, we find the judge's comments to be harmless error at most, and we affirm the trial court.

## I. An Auto Accident and a Trial

This case arose from an auto accident that occurred on September 30, 1996. At about 11:00 a.m. on that day, Cecilia Kanbi was driving her red Sentra automobile down Murfreesboro Road in an eastward direction, when a green Cougar driven by Patricia Sousa drove from a parking lot driveway and entered the road, striking Ms. Kanbi's car on the right side and pushing it into the median.

An ambulance transported Ms. Kanbi to Southern Hills Medical Center, where she was examined and treated for back and neck pain. She was released and told to follow up with her own doctor. Ms. Kanbi was treated for two months by her chiropractor, but her pain has persisted, causing her to curtail many of her activities, including her participation as a dancer with Odomankoma, a traditional Ghanaian dance troupe.

Ms. Kanbi filed a complaint on March 10, 1997, asking for compensatory damages of $15,000. During trial, Ms. Sousa admitted that while she was attempting to cross Murfreesboro Road, her car struck the plaintiff's. She testified that before she pulled out into Murfreesboro Road, she came to a complete stop, and that she looked to her left but did not see the plaintiff's car

or any other car coming in her direction. She admitted that she was largely responsible for the accident, but she contended that she could not be held 100% responsible, on the theory that since she did not see Ms. Kanbi's car advancing down the road, it could be inferred that the plaintiff had been speeding.

The only eyewitness of the accident to testify at trial, other than the plaintiff and the defendant, was Ms. Stephanie Harris. Ms. Harris testified that she was traveling eastward on Murfreesboro Road at about 40 or 45 miles per hour; that the red Sentra was traveling slightly ahead of her at the same speed; that she saw the green Cougar slow down at the end of the driveway, but that it did not stop; and that the driver of the Cougar did not turn her head in the direction of oncoming traffic before entering the roadway.

At the conclusion of the evidence, the judge instructed the jury on the relevant principles of law, including comparative fault, and gave them a Special Verdict Form to record their conclusions. The jury found that Patricia Sousa was 100% negligent and that Cecilia Kanbi was not negligent at all. They also found that Ms. Kanbi had suffered damages in the amount of $18,000. The plaintiff filed a motion to confirm the jury verdict, but to modify it so that it would conform to the *ad damnun* clause in her complaint. The court granted the motion, and entered a judgment against the defendant in the amount of $15,000. This appeal followed.

## II. The Judge's Comments

The appellant argues that four times during the course of the defendant's cross-examination, the trial court made improper comments that had the effect of unfairly undermining the jury's belief in her credibility. We have copied the relevant portions of the trial transcript below, and highlighted the

particular phrases the appellant objects to, in order to create a context for further discussion.

In the first instance, the plaintiff's attorney had elicited Ms. Sousa's admission that the accident was partially her fault, and was questioning her as to the circumstances, when she unexpectedly denied that her car did not move after the impact that threw Ms. Kanbi's car to the median. After a series of questions and non-responsive answers as to what Ms. Sousa actually saw or remembered, the attorney attempted to impeach her by reading her earlier deposition testimony:

> Q. Let's read along together with Line 2. The question I asked you. "At the point of impact your vehicle didn't move and hers was next to the median" What was your answer?
>
> A. Yes.
>
> Q. No. What was your answer?
>
> A. Yes.
>
> Q. Read Line 4.
>
> A. "Uh-huh."
>
> Q. And I asked you, "Is that a yes?" And you answered?
>
> A. Yes.
>
> Q. Is that the truth?
>
> THE COURT: I think she's testified to that. That's asked and answered. **Today she's changing her testimony.**

Shortly thereafter, Ms. Sousa was questioned as to her employment status at the time of the accident, and her answer confused the plaintiff's attorney:

> Q. Now we've heard a lot about your being recruited down here to come work in the health care industry from Canada. The truth of the matter is on the day you hit Ms. Kanbi, you didn't have a job, did you?
>
> A. Yes, I did have a job in November.

Q. You did have a job?

A. Uh-huh. I was not working at the time.

Q. So now you're changing what you just said about you didn't have a job. Were you –

MR. SCUDDER: Objection, Your Honor.

THE COURT: Well, you opened the door with what I thought was irrelevant testimony anyway, and now he's cross-examining her about it. **And apparently there is good reason**. So I'm going to let him do it. **She needs to get her answers consistent and straight because there's a lot of discrepancies here**. Go ahead. I mean, it's real simple. Were you working?

THE WITNESS: I wasn't working, but I had a job to go to in November.

During pre-trial discovery, Ms. Sousa had responded to an interrogatory question about the identity of any person or entity whose acts of negligence contributed to the plaintiff's injuries, by referring to shrubbery and a brick wall near the bottom of the driveway that allegedly obstructed her view. At trial, the plaintiff's attorney read Ms. Sousa's answer, and asked her if she believed that whoever had placed the shrubbery and installed the brick wall was negligent. The question was asked several times, with Ms. Sousa declining to give a simple answer until the court intervened:

Q. What's the answer this time? Are you claiming these people were negligent for putting that bush and that wall there and that's what caused injuries to the plaintiff or not?

A. I'm saying that, yes, I think the wall and the bushes there do obstruct your view and you have to pull forward.

THE COURT: **She's not being responsive to the answer**.

MR. WEDDLE: Your Honor, I'd ask . . .

THE COURT: I instruct you to answer the question about negligence, not that it obstructs the view. Answer his question.

THE WITNESS: I don't know whether that would constitute them being negligent or not.

Finally, the plaintiff's attorney showed Ms. Sousa a photograph of Murfreesboro Road taken from the driveway, and asked her if it showed anything blocking the view:

> Q. . . . But my question to you, I'd like you to answer, is there's not anything blocking your view down Murfreesboro Road when you're up here at this spot.
>
> A. That's not true, sir.
>
> Q. The picture lies?
>
> A. This picture is from down here. Right here.
>
> Q. So if you had been –
>
> THE COURT: If you'll excuse me, I'm going to instruct – there is no – **she's refusing to answer that question. She wants to go on to another question.**
>
> THE WITNESS: When you are right here behind this post you cannot see down the road.

### III. The Standards for Reversal

Our judicial system charges the jury with the duty of deciding the facts of the case under the supervision of the judge, while the province of the judge is to "lay down the rules of law governing the parties without bias and without interference in finding the facts." *McBride v. Allen*, 720 S.W.2d 459, 463 (Tenn. Ct. App. 1979). This separation of functions is mandated by the Tennessee Constitution, which states in Article VI, Section 9 that "[t]he Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law."

Though a judge is permitted to question a witness, even very slight indications of opinion on the part of the judge can have a powerful impact upon the minds of the jury. *McBride v. Allen*, 720 S.W.2d 459 (Tenn. Ct. App. 1979). Thus, in order to protect the jury's fact-finding role, judges must be very careful

about expressing or intimating any opinion on any fact at issue. *Graham v. McReynolds*, 18 S.W. 272 (Tenn. 1891). Improper comments from a judge can, and sometimes do, result in reversal of a judgment. *State v. Suttles,* 767 S.W.2d 403 (Tenn. 1989); *Cleckner v. Dale,* 719 S.W.2d 535 (Tenn. Ct. App. 1986). The comments of the trial judge could be construed as an indication that she had reservations about Ms. Sousa's credibility.

However, not every comment by a judge that can be deemed improper requires reversal. The standard for this court to follow when dealing with allegations of error below are found in the Rules of Appellate Procedure. Rule 36(b) reads

> "A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."

Whether an error should be considered harmless or prejudicial depends in part on how closely balanced the evidence is. If it is very close, then an improper comment by a judge can more easily affect the judgment by tipping the scales in favor of one party or the other. *See State v. Suttles,* 767 S.W.2d 403, 404 (Tenn. 1989).

We have read the entire trial transcript in this case, and we note that the comments objected to did not involve central factual questions. More importantly, we find that the evidence presented of Ms. Sousa's fault was overwhelming, while there was no evidence of any fault on the part of Ms. Kanbi or of any other party, but merely speculation. Under such circumstances, it is highly unlikely that the comments of the trial judge could have affected the jury's verdict. We accordingly affirm that verdict, and the judgment of the trial court.

## III.

The judgment of the trial court is affirmed. Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Patricia J. Sousa.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM B. CAIN, JUDGE


_____
PATRICIA J. COTTRELL, JUDGE