IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 4, 1999 Session

## STEVEN TEDDY BOHANON, ET AL. v. JONES BROS., INC.

**Appeal from the Circuit Court for Macon County**
**No. 3953      Ernest Pellegrin, Special Judge**

_____

**No. M1998-00954-COA-R3-CV - Filed February 22, 2002**

_____

This appeal involves a property damage claim arising from blasting activities incident to the construction of improvements to State Highway 52 in Macon County. Two neighboring property owners filed suit against the contractor responsible for the blasting in the Circuit Court for Macon County seeking actual and punitive damages. A jury returned a verdict for the contractor, and the trial court denied the property owners' post-trial motions. The property owners assert on this appeal that the trial court erred by permitting the introduction of incompetent evidence regarding compliance with the Tennessee Blasting Standards Act of 1975 and by failing to give a promised curative instruction. They also challenge the evidentiary support for the verdict. We have determined that the trial court did not commit reversible error either by admitting the evidence regarding the contractor's seismic monitoring or by overlooking the requested curative instruction. We also decline to second-guess the verdict to the extent that it rested on an assessment of the property owners' credibility regarding the nature and extent of the damages caused by the blasting. Accordingly, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Jacky O. Bellar, Carthage, Tennessee, for the appellants, Steven T. Bohanon and Kathy Bohanon.

William B. Jakes, III, Nashville, Tennessee, for the appellee, Jones Bros., Inc.

**OPINION**

**I.**

In January 1995, the State of Tennessee entered into a contract with Jones Bros., Inc. to construct roadway improvements at the intersection of State Highway 52 and Smalling Road in Macon County. Because the project's plans required cutting through a rocky bluff to widen the road, Jones Bros., using its own employees and subcontractors, engaged in blasting activities for

approximately seven months. In late March 1995, Jones Bros. was in the process of removing the debris after completing the "production blasting" for one portion of the project when it determined that it would be necessary to blast several large boulders that were too large to be moved. During this process, the top of a large boulder "completely blew out," depositing rocks on the nearby property.

Steven Teddy Bohanon and Kathy Bohanon owned a home approximately six hundred feet from the project. Portions of the "fly rock" fell on their property and struck the roof of their house.[1] When the Bohanons complained to Jones Bros.'s project superintendent, he requested them to provide documentation of their damages. Several Jones Bros. employees came to the Bohanons' property to remove the "fly rock." The Bohanons showed these employees the damage that they claimed had been caused by the blasting, but they never provided the requested documentation of the damage and did not permit Jones Bros. to conduct a formal post-blasting inspection of their house.

In May 1995, the Bohanons filed a claim with Tennessee Farmers Mutual Insurance Company, their homeowner's insurance carrier, for damage to their roof and bathroom and cracks in a basement wall. They included with this claim a handwritten estimate by Ms. Bohanon's cousin, an unlicensed contractor, stating that the repairs would cost $27,875. Several months later, Tennessee Farmers paid the Bohanons $27,550 for the claimed damage to their property.

In April 1996, the Bohanons filed suit against Jones Bros. in the Circuit Court for Macon County, alleging that blasting was an ultra-hazardous activity and that Jones Bros. had "performed [the work] negligently." They sought $50,000 in actual damages and $25,000 in punitive damages. In its answer, Jones Bros. admitted that its blasting operations had caused a "small amount of damage" to the Bohanons' house but denied that the blasting had caused all of the damages claimed by the Bohanons. Both parties requested a jury. In August 1996, while their suit was pending, the Bohanons sold the house for $84,600.[2]

A jury heard the case on February 26, 1998. During the trial, the Bohanons presented conflicting testimony regarding the effects of the blasting on the use of their house and failed to produce documentation or other corroborative evidence regarding the repairs to the house or how they spent the $27,550 in insurance proceeds. After deliberating approximately one hour, the jury returned a verdict for Jones Bros. Thereafter, the trial court denied the Bohanons' amended motions for a new trial and for a judgment notwithstanding the verdict.

## II.
### THE ADMISSIBILITY OF THE EVIDENCE REGARDING THE SEISMIC MONITORING

---

[1] There is no dispute that a softball-sized rock penetrated the roof of the Bohanons' house.

[2] The Bohanons built the house in 1990 for approximately $60,000.

The Bohanons take issue with the admissibility of portions of the testimony of Jones Bros.'s manager of safety and human resources regarding the seismic monitoring of the blasting. They assert that admitting the "testimonial proof that Defendant had complied with the Act" was "prejudicial error" because the "Act has no bearing as far as liability is concerned." We have determined that this argument has no merit for two reasons. First, the Bohanons' lawyer failed to make a timely, specific objection to most of this testimony. Second, even if the Bohanons' lawyer had properly objected, the objection was not well-taken because the testimony was plainly admissible on the issue of causation.

**A.**

The only witness for Jones Bros. was John Cain, its manager of safety and human resources. Mr. Cain testified that he was responsible for risk management, job site inspections, and following up on damage claims and that he visited this construction site approximately once a week "to inspect how the job was progressing and whether the workers were following safety rules, whether there was potential problems in the area." Mr. Cain's testimony focused on the steps Jones Bros. took to comply with the requirements for "safe blasting" in the Tennessee Blasting Standards Act of 1975 [Tenn. Code Ann. §§ 68-105-101, - 121 (2001)] and the company's response to Mr. Bohanon's complaint about the "fly rock." Specifically, he testified regarding (1) Jones Bros. practice of using only licensed "blasters,"[3] (2) the seismic monitoring Jones Bros. provided for the project,[4] (3) the blasting logs maintained by Jones Bros. and its subcontractor,[5] and (4) the causes of the "fly rock" problem occurring in late March 1995.

During direct examination, Mr. Cain began to testify about the statutory requirement that the concussion levels for the blasting could not exceed two inches per second at the location of the regularly occupied structure nearest to the blasting.[6] The Bohanons' lawyer objected, stating "The Court can charge the jury as to what the Blasting Standards Act says. . . . What he is stating is absolutely inadmissible and I object to it." The trial court overruled the objection after Mr. Cain stated that his testimony was based on his personal knowledge of "what we did on this particular case." Thereafter, Mr. Cain testified that Jones Bros. had not set up a seismic monitoring station at the Bohanons' house but that it had set up a seismic monitoring station at the house closest to the blast site. He also testified that as far as he knew, the concussion level for each blast recorded at the seismic monitoring station complied with the statutory concussion level standards.

---

[3] Tenn. Code Ann. § 68-105-106 requires the registration of explosives users.

[4] Tenn. Code Ann. § 68-105-105 requires seismograph measurements for certain projects.

[5] Tenn. Code Ann. § 68-105-107(a) requires users of explosives to keep a record of each blast.

[6] Tenn. Code Ann. § 68-105-104(a) provides that "[i]n all blasting operations, except as hereinafter otherwise provided, the peak particle velocity on any one (1) of three (3) mutually perpendicular components of ground motion (transverse, vertical or longitudinal) shall not exceed two inches (2") per second at the location of any dwelling house, public building, school, church, commercial or institutional building normally occupied."

-3-

The cross-examination of Mr. Cain by the Bohanons' lawyer was very contentious and argumentative. While its purpose was to undermine Mr. Cain's credibility, the cross-examination accomplished little more than eliciting additional details regarding the seismic monitoring for this project. During cross-examination, Mr. Cain explained that the Bohanons' house was six hundred feet away from the blasting and that Jones Bros. had set up its seismograph at a house that was one hundred feet away from the blasting in a direct line between the blasting site and the Bohanons' house. He testified that the readings of the concussion levels one hundred feet away from the blasting never exceeded the statutory standards. When the Bohanons' lawyer attempted to undercut this testimony by pointing out that the readings had not been taken at the Bohanons' house, Mr. Cain responded that the concussion levels would necessarily be less at a residence that was farther away from the blast site than the location of the seismograph. The Bohanons' lawyer responded that Mr. Cain did not know that because he was not a geologist and ended his cross-examination.

On redirect examination, the lawyer representing Jones Bros. returned to the statutory requirement that the seismograph be set up at the closest house. The Bohanons' lawyer objected to the question on the ground that Mr. Cain was not qualified to answer it. After the trial court did not definitively respond to the objection, Mr. Cain continued to testify, without further objection, that Jones Bros. could not afford to put a seismograph in every person's yard and that it did not place a seismograph at the Bohanons' house solely because it had placed one at an occupied dwelling much closer to the blasting site. He also repeated that the seismograph one hundred feet from the blasting site never recorded a concussion level that exceeded the statutory limit and that Jones Bros. had not "deep-sixed" any of the blasting records.

**B.**

Objections to the admission of evidence must be timely and specific. Tenn. R. Evid. 103(a)(1); *Grandstaff v. Hawks*, 36 S.W.3d 482, 488 (Tenn. Ct. App. 2000); *Wright v. United Servs. Auto. Ass'n*, 789 S.W.2d 911, 914 (Tenn. Ct. App. 1990). They should state the specific ground or grounds for the objection so that disputes over evidence can be thoroughly and fairly worked through during trial. *Jack M. Bass & Co. v. Parker*, 208 Tenn. 38, 48, 343 S.W.2d 879, 883 (1961); *Middle Tenn. R.R. v. McMillan*, 134 Tenn. 490, 507-08, 184 S.W. 20, 24 (1916). *Layne v. Speight*, 529 S.W.2d 209, 214-15 (Tenn. 1975). A party's failure to make a specific and timely objection generally forecloses a later appellate challenge to the admission of the evidence. *Tire Shredders, Inc. v. ERM-North Cent., Inc.*, 15 S.W.3d 849, 864 (Tenn. Ct. App. 1999); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 702 (Tenn. Ct. App. 1999); Neil Cohen, et al., *Tennessee Law of Evidence* § 1.03[4][h] (4th ed. 2000) ("*Tennessee Law of Evidence*").

During his testy exchanges with Mr. Cain, the Bohanons' lawyer never made a specific objection to Mr. Cain's testimony that the concussion levels of Jones Bros.'s blasting never exceeded the limits in Tenn. Code Ann. § 68-105-104(a). While he argued with Mr. Cain's remark that the "blast shock" at the Bohanons' house "would be less than [the shock at] a closer residence," the Bohanons' lawyer made no specific objection that would have required the trial court to decide whether the statement was admissible. The closest thing we have found to a specific objection to any of Mr. Cain's testimony is the statement early in Mr. Cain's direct examination that "What he

is stating is absolutely inadmissible and I object to it." Such a general statement will not provide a basis on appeal for reversing the admission of disputed evidence.

## C.

The Bohanons argue in their brief that the evidence regarding Jones Bros.'s efforts to comply with the Tennessee Blasting Standards Act of 1975 "has no bearing as far as liability is concerned." If we were to construe this argument and the complaint at trial that Mr. Cain's testimony was "absolutely inadmissible" as an objection to relevance, the objection would still not be well-taken.

Tenn. R. Evid. 402 reflects the policy that all evidence meeting Tenn. R. Evid. 401's test of relevancy is admissible unless excludable on constitutional, statutory, or other well-defined grounds. *Richardson v. Miller*, 44 S.W.3d 1, 21 (Tenn. Ct. App. 2000). Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401; *Castelli v. Lien*, 910 S.W.2d 420, 425 (Tenn. Ct. App. 1995). Evidence need not be dispositive to be relevant. *CRT Custom Prods., Inc. v. Bennett*, No. 01A01-9703-CH-00125, 1997 WL 692970, at *2 (Tenn. Ct. App. Nov. 7, 1997) (No Tenn. R. App. P. 11 application filed); *Tennessee Law of Evidence* § 401[4].

The Bohanons were seeking damages for far more than the "fly rock" that struck their house. They asserted that the blasting had cracked a wall in their basement. Mr. Cain's testimony that the concussion levels of the blasting at a location five hundred feet closer to the blasting site than the Bohanons' house never exceeded the statutory limits casts real doubt on whether the blasting could have cracked the basement wall of the Bohanons' house. While this testimony might have had little relevance with regard to the damage to the Bohanons' roof caused by the "fly rock," it assisted the jury in trying to figure out whether the blasting caused the Bohanons' basement wall to crack. Accordingly, Mr. Cain's testimony was relevant to the issue of causation.

## III.
### THE PROMISED CURATIVE INSTRUCTION

The Bohanons also take issue with the trial court's failure to give a promised curative instruction regarding a comment made by the trial court in response to their lawyer's objection to a portion of Mr. Cain's testimony. While we agree that the trial court's comment was inappropriate, we have determined that failing to give the promised instruction does not provide a basis for setting aside the jury's verdict because the Bohanons' lawyer failed to bring this oversight to the trial court's attention when it could have been easily remedied. By failing to raise this issue in the trial court, the Bohanons have waived their right to raise it on appeal.

## A.

Following the cross-examination of Mr. Cain by the Bohanons' lawyer, the lawyer representing Jones Bros. returned to the reasons why the Tennessee Blasting Standards Act of 1975

required that the seismic monitoring be conducted at the inhabited structure closest to the blasting site. The following exchange between the lawyer and the court occurred in the jury's presence:

> Q.    [Jones Bros. lawyer]: I want to make sure we understand something here, when you set up a seismograph, you are required or you set it up at the closest house instead of one that is far away, because as you get farther away from the blasting the energy decreases, and you want to know if you are damaging one that is close?
>
> [Bohanons' counsel]: He is not qualified to testify about that.
>
> THE COURT: I think it is argumentative. That is something you can argue to the jury. I think all of us know, you don't have to be a scientist or geologist or seismic expert in these other areas to know if there is a blast of any kind it's going to do more damage to something closer than it is further away, but not necessarily damage. Besides that, no one has been qualified as an expert. This man was not qualified as an expert.
>
> [Bohanons' counsel]: I agree.
>
> THE COURT: No one on your side was qualified as an expert.
>
> [Bohanons' counsel]: We'll reserve the objection until the time the jury goes out.

Shortly after this exchange, while the lawyers and the trial court were discussing the instructions out of the jury's presence, the Bohanons' lawyer stated:

> I think the Court made a misstatement to the jury while ago when [the court] said that near as opposed to far on the seismograph that a closer seismograph would have a greater reading than one farther away. I don't agree. As a matter of fact, I think that is misstatement. I think it amounts to . . . [commenting] on the evidence and would ask for a curative instruction.

The trial court responded, "All right. I'll do that. Bring the jury in."

When the jury was reseated, the trial court gave its jury instructions but, for some reason, did not give the curative instruction it had promised to give. Before sending the jury out to deliberate, the trial court asked if there was "anything further from either side." When neither lawyer commented, the trial court excused the jury to begin its deliberations. At no time prior to the return of the verdict did the Bohanons' lawyer bring the failure to give the promised curative instruction

to the trial court's attention.  This matter surfaced for the first time in the Bohanons' motion for new trial.

## B.

For the purpose of this analysis, we will presume that the trial court's comment regarding the direct correlation between the effects of blasting and a structure's proximity to the blasting site was an improper comment on the evidence.[7]  However, despite its potential impact on the jury, we have concluded that the Bohanons cannot now use the trial court's comment to set the verdict aside because they failed to take the steps reasonably available to them in the trial court to prevent or nullify the harmful effect of the trial court's oversight.

Parties cannot use errors committed during a trial as their "ace in the hole" to be played should the result of the trial not be to their liking.  *Davis v. State Dep't of Employment Sec.*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999); *Harwell v. Walton*, 820 S.W.2d 116, 120 (Tenn. Ct. App. 1991).  Accordingly, parties who fail to take reasonably available steps to mitigate the harmful effect of an error occurring during a trial are not entitled to use the error to obtain relief from an appellate court.  Tenn. R. App. P. 36(a); *Huntley v. Huntley*, 61 S.W.3d 329, 340 (Tenn. Ct. App. 2001); *Grandstaff v. Hawks*, 36 S.W.3d at 488.  This rule applies when a party fails to call to a trial court's attention that it has failed to give a promised instruction.  *Cornett v. Deere & Co.*, No. 01A01-9808-CV-00405, 1999 WL 561986, at *5 (Tenn. Ct. App. Aug. 3, 1999), *perm. app. denied* (Tenn. Oct. 25, 1999); *Barrett v. Raymond Corp.*, No. 59, 1991 WL 4996, at *4 (Tenn. Ct. App. Jan. 24, 1991) (No Tenn. R. App. P. 11 application filed).

The trial court agreed to give a limiting or curative instruction regarding its comment in response to an objection to a portion of Mr. Cain's testimony but then inadvertently failed to give the instruction.  The Bohanons' lawyer let this oversight pass despite the fact that he could have easily corrected it by bringing it to the trial court's attention outside the jury's presence.  Therefore, the Bohanons cannot use this error as grounds to overturn the jury's verdict on appeal.

---

[7]To protect the jury's fact-finding role, judges must be circumspect about expressing or intimating an opinion regarding any disputed question of fact.  *Kanbi v. Sousa*, 26 S.W.3d 495, 498-99 (Tenn. Ct. App. 2000); *McCay v. Mitchell*, 62 Tenn. App. 424, 448, 463 S.W.2d 710, 721 (1970).  They must refrain from making statements that might reflect on the weight of the evidence or the credibility of the witnesses or that might otherwise influence the jury concerning the facts.  *State v. Suttles*, 767 S.W.2d 403, 406-07 (Tenn. 1989); *McBride v. Allen*, 720 S.W.2d 459, 462-63 (Tenn. Ct. App. 1979).  These restrictions apply not only to the jury instructions but also to comments made when ruling on objections.  *Loeffler v. Kjellgren*, 884 S.W.2d 463, 474 (Tenn. Ct. App. 1994); *Bass v. Barksdale*, 671 S.W.2d 476, 488 (Tenn. Ct. App. 1984).

One of the disputed fact issues in this case was the extent to which the blasting had damaged the Bohanons' house.  Mr. Cain had testified that the effects of blasting on a structure lessened the farther away the structure was from the blasting.  The trial court's comment was improper because it reinforces the credibility of Mr. Cain's testimony.  The trial court itself must have realized that it had stepped over the line because it readily agreed to give a curative instruction.

# IV.
## THE EVIDENTIARY SUPPORT FOR THE VERDICT

As a final issue, the Bohanons assert that there is no evidentiary foundation for the verdict favoring Jones Bros. They argue that they carried their burden of proof in this case "by a preponderance of the evidence," especially in light of Jones Bros.' admission that "fly rock" hit their house. While the Bohanons' point regarding the concession of Jones Bros. is correct, they have overlooked the likely possibility that the jury concluded that the blasting did not cause the cracks in their basement wall or that the jury disbelieved their evidence regarding the nature and extent of their claimed damages.

### A.

The Bohanons' argument that they carried their burden of proof "by a preponderance of the evidence" reflects a misapprehension of the standard by which appellate courts evaluate jury verdicts. When reviewing a jury's verdict, appellate courts do not give a whit where the weight or the preponderance of the evidence lies. *Hohenberg Bros. Co. v. Missouri Pac. R.R.*, 586 S.W.2d 117, 119-20 (Tenn. Ct. App. 1979). Our task under Tenn. R. App. P. 13(d) is to review the record to determine whether it contains any material evidence to support the jury's verdict. We do not re-weigh the evidence. *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000); *Ross v. Vanderbilt Univ. Med. Ctr.*, 27 S.W.3d 523, 530 (Tenn. Ct. App. 2000). Rather, we take the strongest legitimate view of the evidence that favors the verdict, *Mills v. Solomon*, 43 S.W.3d 503, 507-08 (Tenn. Ct. App. 2000); *Woods v. Herman Walldorf & Co.*, 26 S.W.3d 868, 874 (Tenn. Ct. App. 1999), and affirm the verdict if the record contains any material evidence to support it. *Next Generation, Inc. v. Wal-Mart, Inc.*, 49 S.W.3d 860, 863 (Tenn. Ct. App. 2000).

When we examine the record of a jury trial under Tenn. R. App. P. 13(d), we keep in mind that the weight, faith, and credibility to be given the witnesses lies with the trier-of-fact and that the trier-of-fact's decisions on these matters must be given great weight on appeal. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Kim v. Boucher*, 55 S.W.3d 551, 555 (Tenn. Ct. App. 2001); *Kinnard v. Taylor*, 39 S.W.3d 120, 122 (Tenn. Ct. App. 2000). Accordingly, we will neither re-evaluate the witnesses' credibility on appeal, *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994); *Grissom v. Metropolitan Gov't*, 817 S.W.2d 679, 684 (Tenn. Ct. App. 1991), nor analyze conflicting evidence to determine where the truth lies. *D.M. Rose & Co. v. Snyder*, 185 Tenn. 499, 508, 206 S.W.2d 897, 901 (1947); *Goodman v. Balthrop Constr. Co.*, 626 S.W.2d 21, 24 (Tenn. Ct. App. 1981).

### B.

There is no dispute that blasting is an ultra-hazardous activity. 3 Fowler Harper, et al., *The Law of Torts* § 14.6 (2d ed. 1986). Accordingly, parties using powerful explosives may be held liable for damage caused to adjoining property no matter whether the blasting is done negligently or with the utmost care. *Miller v. Alman Constr. Co.*, 666 S.W.2d 466, 468 (Tenn. Ct. App. 1983); *City of Knoxville v. Peeples*, 19 Tenn. App. 340, 344, 87 S.W.2d 1022, 1024 (1935). However, in

blasting cases, as in other cases involving personal injury or property damage, the plaintiff must (1) prove that the blasting caused the damage for which compensation is sought[8] and (2) present some evidence that will enable the trier-of-fact to make a fair and reasonable assessment of the damages.[9] Each of the major elements of the Bohanons' damage claim are deficient in at least one of these areas.

We turn first to the damage to the roof of the Bohanons' house and their bathroom ceiling. In light of the concession by Jones Bros. that a softball-sized piece of rock struck the house, the record contains material evidence from which the jury could conclude that the blasting operations caused this damage. However, the Bohanons' evidence fell short regarding the nature and extent of the damage caused by the "fly rock."

The Bohanons claimed that the damage caused by the "fly rock" required them to replace their roof as well as their bathroom ceiling. Relying on an "estimate" prepared by Ms. Bohanon's cousin, they claimed that replacing the roof cost $2,150 and that replacing the bathroom ceiling cost $950. However, neither the Bohanons nor Ms. Bohanon's cousin could document any of the expenses for labor or materials to make these repairs. In addition, their testimony that they were forced to replace the roof was inconsistent with a disclosure form they completed when they sold their house in 1996, which stated that the roof on the house was five years old. It seems obvious that the jury disbelieved the Bohanons' evidence regarding the expenses they incurred to repair the damage caused by the softball-sized rock that struck their house in March 1995.

The second major element of the Bohanons' damage claim is the cracked basement wall. Unlike the damage to the Bohanons' roof, Jones Bros. did not concede that their blasting had caused the cracks in the basement wall. Instead, Jones Bros. presented material evidence from which the jury could easily have concluded that the blasting did not cause the cracks. In addition, the only proof of the nature or extent of this damage was supplied by the Bohanons and Ms. Bohanon's cousin who could not document any of the expenses for these repairs. Accordingly, the record contains evidence from which the jury could have concluded either that the blasting did not cause the cracks in the Bohanons' basement wall or that the cracks did not cost over $15,000 to repair.

The final element of the Bohanons' damage claim included $6,750 for rent, packing up the house, and storage and moving expenses. Like the proof of their other damages, the Bohanons could produce no documentation to substantiate these expenses. In addition, the testimony of the members

---

[8] *Silcox v. Smith County*, 487 S.W.2d 652, 654-56 (Tenn. Ct. App. 1972) (holding that the blasting was the most probable cause of the plaintiff's damages); *City of Knoxville v. Peebles*, 19 Tenn. App. at 345, 87 S.W.2d at 1025.

[9] Parties seeking damages have the burden of proving them. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d at 703; *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn. Ct. App. 1982). The nature and extent of claimed damages must be proved with reasonable enough certainty, *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998), to enable the trier-of-fact to make a fair and reasonable assessment of the damages. *Keith v. Murfreesboro Livestock Mkt., Inc.*, 780 S.W.2d 751, 755 (Tenn. Ct. App. 1989); *Wilson v. Farmers Chem. Ass'n*, 60 Tenn. App. 102, 111, 444 S.W.2d 185, 189 (1969).

of the Bohanons' family was inconsistent regarding their occupation of the house between January 1995, when the blasting started, and August 1996, when they sold the house. The absence of documentation and the discrepancies regarding the Bohanons' occupancy of the house provided the jury with a reasonable basis for disbelieving that the Bohanons actually incurred these expenses.

The Bohanons had the burden of proving all the necessary elements of their cause of action, including causation and damages. Although the record contains some evidence upon which a jury might have returned a verdict for the Bohanons, it also provides a reasonable basis upon which the jury could have concluded that most of the claimed damages were not caused by Jones Bros.'s blasting. Accordingly, because it is not our function to re-weigh the evidence, we find that the record contains material evidence to support the jury's verdict in favor of Jones Bros.

## V.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal jointly and severally, to Steven Teddy Bohanon and Kathy Bohanon and to their surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE