IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 10, 2002 Session

**STATE OF TENNESSEE v. PAUL HAYES**

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 99-01383, 84, 85     Chris Craft, Judge**

_____

**No. W2001-02637-CCA-R3-CD - Filed December 6, 2002**

_____

The Appellant, Paul Hayes, appeals his convictions by a Shelby County jury for aggravated burglary and two counts of aggravated robbery. In this appeal as of right, Hayes raises the following issues for our review: (1) whether the trial court erred by prohibiting defense counsel from addressing the jury during entry of the plea; (2) whether the trial court erred by denying Hayes' motion for a mistrial following a detective's testimony that Hayes was a suspect in uncharged similar crimes; (3) whether the trial court committed plain error by limiting the scope of cross-examination of a co-defendant testifying for the State; (4) whether the evidence was sufficient as a matter of law to support the convictions; and (5) whether the cumulative effect of all errors amounted to a denial of due process of law. After a review of the record, we hold that Hayes' issues are without merit and affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

William D. Massey, Memphis, Tennessee, for the Appellant, Paul Hayes.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and David Henry and David Pritchard, Assistant District Attorneys General, for the Appellee, State of Tennessee.

# OPINION

## Factual Background

On October 26, 1998, the victims, Saeed Zarshenas and his guest, Jacquelyn Scruggs, were dining at Zarshenas' home in Germantown. After Zarshenas finished eating, he went to the backyard to smoke a cigarette. While Zarshenas was smoking, Brian Kimbrough jumped over the backyard fence, yelling, "D.E.A.," and asking where the guns and drugs were located. Kimbrough ordered Zarshenas back inside the home at gunpoint, forced him to the kitchen floor, and handcuffed him. The Appellant followed Kimbrough into the house, grabbed Scruggs from behind, and held a gun to her head. The Appellant removed her ring and necklace and took $200 from her purse. Scruggs was then forced to the floor, handcuffed, gagged, and a hood was placed over her head. Two other accomplices, Dexter Futrell and "Shorty," had also entered the house.

The four men began to search the home looking for drugs and money. Zarshenas was blindfolded, gagged, and his feet were tied together. The men kept asking, "Where is the safe?" Zarshenas responded that he did not have a safe, which only angered the men. Zarshenas and Scruggs were "just dragged around and pushed and punched," and Zarshenas was stabbed several times in the buttocks and burned multiple times with a cigarette lighter. Also, sexual advances were made towards Scruggs. One of the men located a briefcase containing $5,000 in Zarshenas' car. The men also took a camcorder, leather jacket, collector's knife, jewelry, and $1,500 found inside a suitcase. The men left through the back door, which sounded the home invasion alarm. After the Appellant was certain the men had exited the residence, he freed himself from his restraints, called 911 and, then, helped Scruggs free herself from her restraints.

A Shelby County grand jury indicted the Appellant, Futrell, and Kimbrough for aggravated burglary and two counts of aggravated robbery. The identity of "Shorty" was never determined. Futrell and Kimbrough pled guilty and received eight-year sentences. After a trial by jury, the Appellant was convicted as charged and received an effective seventy-five-year sentence. His motion for new trial was denied, and this timely appeal followed.

## ANALYSIS

### I. Entry of Plea

In his first issue, the Appellant contends that "the trial court erred by admonishing counsel not to address the jury in the context of the entry of the pleas." Each of the three offenses were returned in separate indictments. The first indictment was read to the jury, and the trial court requested the Appellant to enter a plea of guilty or not guilty. Defense counsel responded, "Your Honor, ladies and gentlemen of the jury as to that indictment and as to each indictment the defendant, Paul Hayes, pleads not guilty and asks for your consideration of these matters at trial." The second indictment was read to the jury, and the Appellant was again requested to enter a plea. Defense counsel began responding in the same fashion, and the State objected to counsel "addressing

-2-

the jury and making statements."  After a bench conference, the trial court sustained the objection, stating that:

> Mr. Massey, you're basically talking to the jury.  And the first time that I asked, "How does the defendant plead," you started talking about, "And the defendant asks you for your consideration."  The defendant is not allowed to ask the jury anything. So I'd ask you to say, you know, "Your Honor, ladies and gentlemen of the jury, the defendant enters a plea of not guilty."  And then, also the first time, on the first indictment, you were talking about, "As to all the indictments" and I just asked you as to that particular indictment.  So you're adding a lot of things.  You're making an opening statement in your plea.

When reading of the indictments resumed, defense counsel, thereafter, responded, "Your honor and ladies and gentlemen of the jury, as to that indictment, the defendant, Paul Hayes, enters a plea of not guilty."  The Appellant argues that statements of defense counsel should have been permitted because "[t]here was nothing erroneous or improper in counsel's statement to the jury." Additionally, he contends that he was denied a fair trial because

> it is likely that the jury understood the trial court's ruling on the prosecution's objection as well as the bench conference which followed closely thereafter to mean that the trial court was adopting a position in accord with the prosecution.  Thus, it appeared to the jury that the trial judge and the prosecution had a common goal which was distinct from that of the defense.

The reading of the indictment by the prosecutor after the jury has been sworn is of long-standing practice in this state and is still followed in many judicial districts.  *See* 10 DAVID LOUIS RAYBIN, TENNESSEE CRIMINAL PRACTICE AND PROCEDURE, §§ 26.10-11 (1985) (the purpose being to inform the jury as to the issue(s) they have been sworn to try).  After the indictment is read, the defendant is requested to enter a plea.

First, with regard to this issue, we note that the Appellant failed to provide any authority in support of his assertion, and this court is unaware of any, that he possessed a right to address the jury during entry of the plea.  Rule 11 of the Tennessee Rules of Criminal Procedure allows a defendant to plead not guilty, guilty, or *nolo contendere.*  Rule 11 does not create a right to address the jury during entry of the plea.  Indeed, the appropriate time to address the jury prior to the presentation of evidence is within the opening statement, which permits the defendant to set "forth their respective contentions, views of the facts and theories of the lawsuit."  Tenn. Code Ann. § 20-9-301 (1994). The overriding perspective of this issue is addressed, however, by the well-established principle that in the absence of any statutory or procedural right, the trial judge has wide discretion in conducting trial matters.  *Marress v. Carolina Direct Furniture*, 785 S.W.2d 121, 129 (Tenn. Ct. App. 1989). Second, the Appellant's argument that he was denied a fair trial because the trial court's ruling gave the appearance to the jury that the trial court and the prosecution had a common goal is without merit.  The trial court sustained the prosecution's objection during a bench conference out of the

hearing of the jury. If we were to adopt the Appellant's argument, a trial court would not be permitted to sustain any objection by way of a bench conference. This issue is without merit.

## II. Motion for Mistrial

Second, the Appellant argues that "the trial court erred by denying [his] motion for mistrial after Detective Bruce stated to the jury that [he] was suspected of uncharged similar crimes." After the State advised that Detective Bruce would be their next witness, defense counsel moved *in limine* that no witness be allowed to mention "anything about any prior record" and that the State's witnesses be informed of such a ruling.[1] The trial court granted the motion, and the prosecutor stepped outside the courtroom to inform Detective Bruce of the ruling. Then, Detective Bruce was called to the stand, and the following colloquy occurred:

> Q. Subsequent to the statement that you took from Mr. Futrell, did you put together photo spread arrays, or participate in the organization of photographic displays?
>
> A. Yes, sir.
>
> Q. And you mentioned that you were contacted by the Memphis Police Department robbery squad. Did you work with somebody closely on this case and on other cases from the robbery bureau?
>
> A. Yes, I did.
>
> Q. And who was that, sir?
>
> A. Sergeant Darren Goods.
>
> Q. And what was the purpose of this joint investigation?
>
> A. We believed there to be a connection between this particular home invasion robbery and several home invasion robberies in Memphis and we believe the suspects were the same in several of those.

When Detective Bruce implied that the Appellant was a suspect in other home invasion robberies, he injected inadmissible evidence into the trial. *See* Tenn. R. Evid. 404. This evidence was particularly damaging because it informed the jury of the Appellant's propensity for committing crimes similar to the offense on trial. *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994).

After the jury heard Detective Bruce's statement, the Appellant moved for a mistrial. The trial court found that Detective Bruce's statement did not violate the Appellant's motion *in limine*,

---

[1] The presentence report reflects that the Appellant has twelve prior felony convictions.

which concerned only prior arrests and convictions. Nonetheless, the trial court gave the following curative instruction:

> Ladies and gentlemen, I don't want you all to get the wrong impression. Usually, it's not my job to comment on the evidence as the Judge, okay? But, I can tell you what's not evidence. So you'll understand, there was just testimony by this officer that he and somebody from Memphis were working, trying to solve home invasion robberies and thought that some suspects might be similar. We're not going to get into the facts of those other home invasions, or robberies, if there were any, 'cause they have nothing to do with this case. But, that investigation did not result in Mr. Hayes being charged with any of those offenses, nor is he suspected in committing any of those offenses, nor is he charged with any of those. So we don't want you all to think, well maybe, Mr. Hayes had done this before, because this officer investigated him. We're not hiding any of the charges. He was never charged with any of those. Any you're only to consider whether or not the state has proven beyond a reasonable doubt that he's committed these three indictments here.
>
> So for that reason, I don't want you to take that testimony as thinking that maybe Mr. Hayes has committed any other offenses, because that's not the case.
>
> I talked with the attorneys up here. We don't want to start calling witnesses about other cases that have nothing to do with Mr. Hayes, 'cause it has nothing to do with this case. But, at the same time I don't want to leave the impression with you all that because he was working with another officer, trying to solve cases that somehow Mr. Hayes was involved, because he was not. Does everybody understand that?
>
> (Jurors affirmed).
>
> All right. And I'll note that all fourteen of them are shaking their heads, yes.

"Generally, a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such action by the trial judge." *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991) (citation omitted). In reviewing a trial court's denial of a motion for mistrial, this court will not disturb that decision unless there is an abuse of discretion. *State v. Adkins*, 786 S.W.2d 642, 644 (Tenn. 1990); *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). When determining whether a mistrial is necessary after a witness had injected improper testimony, this court has often considered: (1) whether the improper testimony resulted from questioning by the State, rather than having been a gratuitous declaration; (2) the relative strength or weakness of the State's proof; and (3) whether the trial court promptly gave a curative instruction. *See State v. Demetrius Holmes*, No. E2000-02263-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Nov. 20, 2001).

In the present case, it does not appear from the record that the State furtively sought to elicit testimony regarding the Appellant's criminal background. Rather, the record suggests that the State was attempting to establish that, through the course of a joint investigation, the two officers constructed photographic and video line-ups. In its ruling, the trial court first observed that the detective's statements did not violate its instruction that the State's witnesses not mention "anything about any prior record," as no record was mentioned. Further, the trial court found that the detective's statements were "not done on purpose to implicate the defendant in other crimes." The proof before us does not preponderate against this finding. The trial court immediately provided the jury with a sufficient curative instruction that they were to disregard the statements concerning any uncharged similar conduct. We presume that the jury followed the trial court's explicit instruction not to consider the inappropriate statement. *State v. Smith*, 893 S.W.2d 908, 923 (Tenn. 1994), *cert. denied*, 516 U.S. 829, 116 S. Ct. 99 (1995). Under these circumstances, we hold that the trial court did not abuse its discretion when it denied the motion for a mistrial. This issue has no merit.

### III. Scope of Cross-examination

The Appellant next argues that "the trial court erred by improperly limiting the cross-examination of Dexter Futrell." We note that this issue was not included in the Appellant's motion for new trial. *See* Tenn. R. App. P. 3(e). The general rule is that this court does not consider issues that are not raised in the trial court. *State v. Hoyt*, 928 S.W.2d 935, 946 (Tenn. Crim. App. 1995). However, this court may "recognize errors pursuant to rule 52(b) that seriously affect the fairness, integrity or public reputation of judicial proceedings when necessary to prevent a miscarriage of justice." *State v. Adkisson*, 899 S.W.2d 626, 639-40 (Tenn. Crim. App. 1994) (footnotes omitted). This rule should not be invoked to recognize an error that is not plain or does not affect a substantial right of the accused. *Id*. at 640. In determining whether an error constitutes plain error, the reviewing court must consider the following factors:

    (a) the record must clearly establish what occurred in the trial court;
    (b) a clear and unequivocal rule of law must have been breached;
    (c) a substantial right of the accused must have been adversely affected;
    (d) the accused did not waive the issue for tactical reasons; and
    (e) consideration of the error is necessary to do substantial justice.

*Id*. at 642 (footnotes omitted). Thus, our review will be limited to address alleged errors encompassed within these guidelines. Tenn. R. Crim. P. 52(b).

In his brief, the Appellant contends that the trial court improperly limited questioning during defense counsel's cross-examination of the co-defendant, Dexter Futrell, who was a key witness for the State. Specifically, defense counsel asked:

    Q. And you were [previously] convicted of second degree murder?
    A. Yes.
    Q. And you went to the penitentiary then, I guess; didn't you?

A. Yes.
Q. Where did you go then?
A. I went to several penitentiaries.
Q. And you got out?
A. Yes, sir.
Q. You met the parole board, I guess?
A. Yes, sir.
Q. Did you talk to the parole board?
A. Yes, sir.
Q. And you told them that if they let you out you were a changed man; didn't you?

The State objected to the relevance of the question. The trial court sustained the objection, finding that defense counsel "would have to establish that at some time [the Appellant] said to the [parole board] that he would not get into any more trouble. That he, in fact, was planning on committing this crime." The Appellant argues that "[t]he question was proper to impeach Futrell as well as to show his bias toward the defendant on account of the favorable treatment he had received."

The Sixth Amendment of the United States Constitution guarantees a defendant the right to confront witnesses against him at trial. Similarly, article I, § 9 of the Tennessee Constitution and Tennessee Code Annotated § 40-17-105 (1997) guarantee a defendant's right to meet the witnesses face-to-face. Essentially, the purpose of the Confrontation Clause is to protect the defendant's right of cross-examination. *Tennessee v. Street*, 471 U.S. 409, 414, 105 S. Ct. 2078, 2082 (1985) (citations omitted). The scope of cross-examination extends to "any matter relevant to any issue in the case, including credibility." Tenn. R. Evid. 611(b). Moreover, a party "may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness." Tenn. R. Evid. 616. However, the propriety, scope, manner, and control of cross-examination of witnesses rests within the sound discretion of the trial court. *Coffee v. State*, 216 S.W.2d 702, 703 (Tenn. 1948); *State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995).

First, there was no evidence produced at trial that Futrell received favorable treatment in exchange for his testimony against the Appellant. The parole board hearing occurred well before the commission of these crimes. Regarding the question's impact on Futrell's credibility, defense counsel offered no proof that the statement had in fact been made to the parole board or that Futrell intended to commit these crimes at the time the statement was made. "[A] defendant's right to confrontation does not preclude a trial court from imposing limits upon cross-examination which take into account such factors as harassment, prejudice, issue confrontation, witness safety, or merely repetitive or marginally relevant interrogation." *State v. Reid*, 882 S.W.2d 423, 430 (Tenn. Crim. App. 1994); *see State v. Wyrick*, 62 S.W.3d 751, 770 (Tenn. Crim. App.), *perm. to appeal denied*, (Tenn. 2001). Any statement made by Futrell to the parole board regarding whether he was a "changed man" is, at best, marginally relevant to the Appellant's credibility, and defense counsel laid

no foundation for asking the question. Thus, the trial court did not abuse its discretion by limiting interrogation into such matters. Accordingly, we find that no error occurred.

### IV. Sufficiency of the Evidence

The Appellant argues that the evidence introduced at trial was insufficient to support his convictions for aggravated burglary and two counts of aggravated robbery. Specifically, he contends that he was not sufficiently identified as the perpetrator of the offenses. A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. 1999); *State v. Burlison*, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993). Instead, the Appellant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Aggravated robbery is defined as robbery accomplished through the use of a deadly weapon. Tenn. Code Ann. § 39-13-402(a)(1) (1997). A person is guilty of aggravated burglary if that person, without the effective consent of the property owner, enters a habitation with intent to commit a theft. Tenn. Code Ann. §§ 39-14-402(a)(3), -403(a) (1997). The proof at trial, in the light most favorable to the State, established that both victims identified the Appellant as one of the perpetrators. Additionally, the co-defendant, Futrell, testified that the Appellant participated in the crimes at the Zarshenas residence on the evening in question. While the Appellant presented alibi witnesses and the co-defendant, Kimbrough, testified that the Appellant was not involved in the crimes, the weight and credibility of the evidence is resolved by the jury. The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). We find the evidence legally sufficient to support the conclusion that the Appellant committed the offenses of aggravated burglary and aggravated robbery. This issue is without merit.

### V. Cumulative Effect of All Errors

The Appellant contends that the cumulative effect of all errors violates his constitutional rights. As this court has not found any error with respect to the Appellant's previous issues, we find this final issue to be meritless.

### CONCLUSION

Based upon the foregoing, we conclude that the trial court did not err in limiting defense counsel's statements during entry of the Appellant's plea or by denying a mistrial after Detective Bruce stated that the Appellant was suspected of uncharged similar crimes. It was not plain error for the trial court to limit the scope of the Appellant's cross-examination of Dexter Futrell. Furthermore, the evidence was sufficient to sustain the Appellant's convictions. Accordingly, the judgment of the Shelby County Criminal Court is affirmed.

_____
DAVID G. HAYES, JUDGE